IOWA LIFE INSURANCE COMPANY, PLAINTIFF IN ERROR, v. EASTERN MUTUAL LIFE INSURANCE COMPANY, DEFENDANT IN ERROR.

Argued December 5, 1899—Decided March 5, 1900.

The defendant, a life insurance company, agreed, in writing, with the plaintiff, another life insurance company, to pay to the plaintiff, in consideration of a specified premium, the sum of $1,000 upon proof that J. T., who held plaintiff's policy No. 20,308, had died on or before a certain future date. By a supplementary written agreement a later date was fixed. The plaintiff sued on the agreements, alleging the death of J. T. before said date, proof thereof to the defendant, and payment by the plaintiff of the amount for which J. T. was insured. What this amount was did not appear from the declaration. The defendant pleaded the general issue and, specifically in bar of the action, that the defendant was a New Jersey corporation, and that the agreements were contracts of re-insurance and were invalid, because they were not made with the consent, in writing, of two-thirds in number of the holders of the policies proposed to be re-insured, and were not submitted to the secretary of state and by him approved, as provided by section 66 of the Insurance act. *Gen. Stat.*, p. 1755. To this plea the plaintiff filed a demurrer, which was overruled by the trial judge, and judgment thereon entered in favor of the defendant, on which record error was assigned. It was *held*—

1. That the said provisions of section 66 are interdependent and stand or fall together.

2. That said section 66 is not invalid under amendment XIV. to the U. S. Constitution, for it deprives no person of any right. What it does is to regulate certain artificial persons which, by the law of their being, are subject to such regulation.

3. That the duties devolved by said section on the secretary of state, and subsequently transferred by statute to the commissioner of banking and insurance, are neither legislative nor judicial, but are administrative.

4. That it sufficiently appeared from the pleadings that the agreements sued on were contracts of re-insurance.

5. That the fact that these contracts of re-insurance related to a single policy only, did not take them out of the statute.

6. That, as it thus appeared that the statute was both valid and applicable to the agreements, the trial judge did not err in overruling the demurrer and giving judgment for the defendant.

On error to the Camden Circuit Court.

For the plaintiff in error, *Lewis Starr* and *Lindley M. Garrison.*

For the defendant in error, *Howard Carrow.*

The opinion of the court was delivered by

ADAMS, J. The trial judge overruled a general demurrer to a special plea and gave judgment for the defendant. Error has been assigned on the record.

The suit was brought by the Iowa Life Insurance Company against the Eastern Mutual Life Insurance Company, upon an agreement, dated October 10th, 1896, and a supplementary extension thereof, dated March 1st, 1897, which are as follows:

" The Eastern Mutual Life Insurance Company, of Camden, New Jersey, by this policy of insurance, in consideration of twenty $\frac{15}{100}$ dollars, promises to pay to the Iowa Life Insurance Co., as insurer, one thousand dollars, upon proof that Joseph Terrett, of Ashley, county of Luzerne, State of Pennsylvania, who is insured in the Iowa Life Insurance Co., under policy No. 20,308, shall have died on. or before the second day of April, 1897. This insurance may be renewed by the payment of twenty-one $\frac{09}{100}$ dollars on the first day of April and October in each year hereafter for nine years. The title to benefits under this policy is not assignable.

" Signed at Camden, New Jersey, October 10th, 1896.

"GEORGE W. TOWNSEND,
"*Secretary.*
" J. E. NIXON,
"*President.*

" In consideration of extra premium of one $\frac{50}{100}$ dollars, this policy of insurance is extended to April 15th, 1897.

" Dated at Camden, N. J., March 1st, 1897.

"GEORGE W. TOWNSEND,
"*Secretary.*
" J. E. NIXON,
"*President.*"

The declaration sets up the original and supplementary agreements; alleges that Joseph Terrett, the insured, died on April 10th, 1897; that due proof of his death was delivered to and accepted by the defendant; that the plaintiff thereupon paid the amount for which said Joseph Terrett was insured, and that thereby the defendant became liable to pay to the plaintiff the sum of $1,000.

The special plea that was demurred to avers, in bar of the action, "that the defendant was, at the time of the making of the contracts in said declaration mentioned and is now, a life insurance company organized and incorporated under and by virtue of the laws of the State of New Jersey; that the contracts mentioned in said declaration wherein defendant, for the consideration in said declaration mentioned, agreed to pay to the plaintiff, as insurance, the money as mentioned therein, are contracts of re-insurance, and were not, nor were either of them, made with the consent in writing of two-thirds in number of the holders of the policies proposed to be re-insured, nor was such contract of insurance, or either of them, submitted to the secretary of state and by him approved as provided by law, and hence said contracts of insurance are utterly invalid and of no force whatever."

The statutory provision on which this plea is founded is paragraph 66 of "An act to provide for the regulation and incorporation of insurance companies" (Revision), approved April 9th, 1875, and will be found on page 1755 of the General Statutes. It reads as follows: "That it shall not be lawful for any life insurance company organized or to be organized under the laws of this state, to contract for the re-insurance of any of its outstanding risks or policy obligations in any other company, nor itself to re-insure such risks or obligations of another company unless two-thirds in number of the holders of the policies proposed to be re-insured shall assent thereto in writing; and the contract for such re-insurance shall be utterly invalid and of no force until it shall have been submitted to the secretary of state of this state and by him approved, which he shall only do after due

inquiry and upon satisfactory evidence that the interests of the policyholders are fully protected and that the consent of two-thirds of them has been had in writing as aforesaid."

The section above quoted was originally passed as the third section of a supplement to the Insurance act, approved March 8th, 1877. *Pamph. L., p.* 100. This supplement was subsequently amended as to provisions not material to this inquiry, and as amended was incorporated in the revision of 1875. *Gen. Stat., p.* 1754. The first section of this supplement provides, among other things, that whenever the secretary of state, as the result of examination authorized by the act to which the statute of 1877 is a supplement, shall ascertain that the assets of any life insurance company are not sufficient to re-insure its outstanding risks and discharge its total actual liabilities it shall be his duty to apply to the Chancellor for an injunction restraining such corporation from the transaction of any further business or the transfer of its assets, or any portion thereof, in any manner whatsoever. The fourth section says that it shall be lawful for the receiver of any life insurance company organized under the laws of this state, whenever the assets of such company shall be sufficient for that purpose, and the consent of two-thirds of the policyholders thereof shall have been had in writing, to re-insure all the policy obligations of such company in some other solvent life insurance company, or whenever the assets are insufficient to secure the re-insurance of all the policies in full, he may re-insure such a percentage of each and every policy outstanding as the assets will secure; provided, that there shall be no preference or discrimination as against any policyholder, and that the contract for such re-insurance by the receiver shall be approved by the secretary of state before it shall have effect.

It is now urged by the plaintiff in error that for several reasons the defence set up by the special plea is insufficient in law.

It is said, in the first place, that the sixty-sixth section of the Insurance act is invalid, because it violates that provision

of the Fourteenth amendment of the constitution of the United States which declares that no state shall deprive any person of life, liberty or property without due process of law. The argument submitted on behalf of the plaintiff in error is this: A corporation is a person. The right to contract is both a "liberty" and a "property" right which is essential to corporate existence. The sixty-sixth section takes from a corporation its right to thus contract. It is not a regulation, nor is it reasonable, but it is oppressive and wrong. The legislature may determine what powers and franchises shall be conferred on corporations, but it cannot constitutionally provide for conferring impaired or illusory powers—that is, it may limit the sphere of its grant, but within the sphere the company must have the liberty to contract, and this right cannot be invaded. Consequently the lawmaking power cannot limit the right of a corporation to contract as to a matter that is within its corporate range, unless it is a proper subject of legislative control, such as a case that falls within the scope of the police power. The constitution has not expressly confided the matter of insurance to the legislature, and therefore legislative action can be justified only when it is reasonable.

This argument, so far as it is not an assertion that the statute is unreasonable, is a denial of the right to restrict by regulation, and applies to whatever in the sixty-sixth section is regulative; to the provision requiring the assent of two-thirds of the policyholders no less than to that requiring the approval of the secretary of state. Freedom, it is said, is of the essence of the right to contract; regulation restricts, and restriction fetters freedom. This line of reasoning does not distinguish as it should between the natural and the conventional. If the power to re-insure were the natural right of a natural person it would be inalienable, except by due process of law. Here the person and the right are both artificial. The defendant is the creature of legislation, enacted under a constitutional provision that says: "The legislature shall pass no special act conferring corporate powers, but they shall pass general laws under which corporations may be organized

and corporate powers of every nature obtained, subject, never-
theless, to repeal or alteration at the will of the legislature."
*Const. of N. J., art.* 4, § 7, *pl.* 11. The defendant, therefore,
by the very law of its being, got only what was granted, now
possesses only what repeal or alteration has not taken away
or modified, and can hold in the future only what repeal or
alteration may leave undisturbed. The power to alter implies
the power to regulate. Indeed, to alter usually is to regulate.
The defendant cannot, in a constitutional sense, be deprived
by this regulation of any right because it never was exempt
from such regulation. There the Fourteenth amendment finds
it and there it leaves it. If the exercise of the right of regu-
lation is in any case absurd, so as to stultify the evident legis-
lative purpose, the courts can rectify the error by applying
some recognized canon of statutory interpretation. Within
due limits the capacity of the lawmaking power to regulate
the subject of insurance is unquestionable.

It is said in the second place that the provision in the
sixty-sixth section that concerns the secretary of state is
unconstitutional, and that if this be true the entire section is
void because its provisions are interdependent. The rule as
to the divisibility of a statute is thus stated in *Cooley Const.
Lim.* \*178 : "If a statute attempts to accomplish two or more
objects and is void as to one it may still be in every respect
complete and valid as to the other. But if its purpose is to
accomplish a single object only and some of its provisions are
void, the whole must fail unless sufficient remains to effect
the object without the aid of the invalid portion." In *John-
son* v. *State,* 30 *Vroom* 535, this court declared the law thus :
" The same statute may be in part constitutional and in part
unconstitutional, and if the parts are wholly independent of
each other, that which is constitutional may stand and that
which is unconstitutional will be rejected ; but if the different
parts of the act are so intimately connected with and depend-
ent on each other as to warrant a belief that the legislature
intended them as a whole, and that if all could not be carried
into effect the legislature would not have passed the residue

independently, and some parts are unconstitutional, all the provisions which are thus dependent upon each other must fail." In applying this rule two considerations are to be kept in mind. One is that the matter rests not in proof but in hypothesis, the question being not what the legislature enacted but what it would have enacted if it had been aware that all of the act that was passed could not stand. The other is that, while there is a strong presumption that the whole of a statute expresses the whole mind of the legislature, there is only a weak presumption that less than the whole of a statute will express the whole mind of the legislature. These considerations inculcate caution and cast a burden on him who asserts that an enactment is divisible. He is bound not indeed to prove, for that is impossible, but to show that it is at least clearly probable that, after part of the act had been cut out, the lawmaking power would have been satisfied with the residue. Let this test be applied to the case in hand. The sixty-sixth section was passed to effect a single result—the security of policyholders. It requires the assent of two-thirds of them and also the approval of the secretary of state. The legislature having thus carefully provided two safeguards, how is it clearly probable that it would have been content with only one? It seems at least as likely that the legislature, if aware that one precaution must fail, would have either supplied its place or strengthened the other. We conclude that the weight of the argument is with the plaintiff in error and that the section must stand or fall as a whole. It becomes necessary, then, to examine the constitutional objection.

The criticism is this—that the legislature has attempted to delegate to the secretary of state a legislative power. The brief submitted on behalf of the plaintiff in error further suggests, somewhat tentatively, that the power may be judicial. We think that it is neither legislative nor judicial, but that it is administrative. When the act of 1877 was passed the secretary of state was *ex-officio* commissioner of insurance. He so continued until the establishment of the depart-

ment of banking and insurance, in 1891, when his duties were devolved upon a new officer, called the commissioner of banking and insurance.    *Gen. Stat., pp.* 137, 1752 § 51. It was made the duty of the secretary of state, among other things, to make reports and issue certificates of authority to agents who had complied with the requirements of the act; to cancel such certificates on being satisfied that the statements on which they were issued were fraudulent, or that the capital of the company had been impaired; to ascertain whether the required capital had been paid and was possessed by the company in money, or in such bonds and mortgages as are required by the act, and, in the case of a mutual company, whether it had received and was in actual possession of the capital, premium notes and *bona fide* engagements of insurance, or other securities, to the full extent and of the value by law required; to be satisfied and to certify that the deposit called for by law had been made; to be satisfied as to the existence of a surplus and to certify thereto; to compute the value of policies and bonds according to such recognized standard of valuation as he might deem best for the security of the business and the safety of the persons insured, and to certify to the result; to examine into the condition of companies and to require them to make up deficiencies; to determine whether a company had complied with the laws, and to certify thereto, as a condition precedent to the issuing of policies; to approve of securities on deposit and to change the same.    *Insurance act*, §§ 5, 6, 7, 22, 25, 41, 46, 48, 52, 53. This list of instances, culled from less than one-fourth of the entire number of sections, might be much extended by an examination of the whole act and of recent statutes relative to insurance.    *Pamph. L.* 1899, *pp.* 366, 433.    The act of 1877 is homogeneous with the rest of the legislation on this subject.    What section 66 calls on the commissioner to do is not to legislate by laying down a new rule, but to enforce a prescribed rule; not to adjudicate unless every exercise of judgment is to be called a judicial act, but to perform a duty of ascertainment; to determine, by an examination of values

348    COURT OF ERRORS AND APPEALS.

Iowa Life Ins. Co. v. East. Mut. Life Ins. Co.   *64 N. J. L.*

and mathematical relations, whether a safe financial situation exists and whether a certain document has been properly signed. A convenient collection of many of the New Jersey cases upon the distinctions between the three powers of government may be found in notes to articles 3, 4, 5 and 6 of the constitution, printed in the general statutes. To hold that the acts required of the secretary of state by section 66 and similar enactments are anything but administrative, would be at variance with principle and authority. It would certainly paralyze the department of banking and insurance.

In the next place, it is said that the contracts sued on are not re-insurance contracts and, therefore, are not within the section of the Insurance act on which the plea is founded It is plain that they are re-insurance contracts, for they re-insure. What is re-insurance? It is insurance by the first insurer of the whole or some part of his interest in the risk created by his contract of insurance; or, as it is otherwise defined, it is the contract that one insurer makes with another to protect the first from a risk he has already assumed. *Port. Ins.* \*259; *May Ins.*, § 9. It appears from the agreement of October 10th, 1896, that the Iowa Life Insurance Company, by its policy No. 20,308, had insured the life of Joseph Terrett, and that this policy was in force at the date of said agreement. The Iowa Life Insurance Company, therefore, was under some liability against which the contracts of October 10th, 1896, and March 1st, 1897, would inevitably operate as a complete or partial indemnity. This is re-insurance. Inasmuch as the demurrer tests the declaration as well as the plea, it may be asked whether the agreements sued on, considered as contracts for re-insurance, are sufficiently pleaded. It is a cardinal principle of the law of re-insurance that a re-insurer cannot be liable as such for more than the amount of the primary insurance. In this case neither the agreements sued on nor the declaration show what the amount of the primary insurance was. Consequently the sum of $1,000 mentioned in the agreement of October 10th, 1896, while it is the maximum limit of the defendant's liability, is not

. NOVEMBER TERM, 1899. 349

*35 Vroom.* Iowa Life Ins. Co. v. East. Mut. Life Ins. Co.

necessarily the measure of that liability, for the plaintiff's liability under policy No. 20,308 may have been for less than $1,000. We think that the declaration, fairly construed, states a good cause of action against the defendant for some amount not exceeding $1,000, which, though unspecified, is, in a legal sense, certain, because it can be made certain by reference to policy No. 20,308, which, the declaration says, is the primary contract. Our conclusion, then, as to this branch of the case, is that the contracts sued on are on their face and by their necessary effect re-insurance contracts and therefore *prima facie* within the statute, and that they are well pleaded as against a general demurrer.

In the next place, it is said that these contracts, even if they are contracts of re-insurance, are not within the statute, because they relate to a single policy, whereas, to quote from the brief of counsel for the plaintiff in error, section 66 "undoubtedly was drawn to meet only those cases where an insurance company, by a contract, re-insured its entire risks or any considerable portion of them, or where a company by a single contract assumed to carry the risks of another corporation." Legislative intent is learned from statutory language; regard being had, in the interpretation thereof, to the requirements of grammar and good sense, with some aid, especially in case of ambiguity, from a consideration of the policy and purpose of the enactment. It is said to be indubitable that section 66 applies only to the re-insurance of the entire risks of a company or of some considerable portion of them. But the words of the section, which are unambiguous, not only do not declare the intent thus imputed to them but express, affirmatively, a different intent. The statutory case is not the re-insurance of all the risks of a company or of a considerable portion of its risks, but is the re-insurance of any outstanding risks. A contract to re-insure three policy obligations is as completely within the words of the statute as is a contract to re-insure thirty, or three hundred, or three thousand policy obligations. The language of the section, by its strict terms, embraces the re-

insurance of any number of policies greater than one, as, for example, "two." It is true that the number "two" is not evenly divisible by three, and so, in order that "two-thirds · in number of the holders of the policies proposed to be re-insured" should assent to the re-insurance, it would be necessary, in that case, to exceed the fraction. This, however, is equally true of all numbers that are not evenly divisible by three, and so proves too much to be a valid argument. Would it, then, be a reasonable construction of the words of the statute to hold that they apply to the re-insurance of any number of policies greater than one, but not to the re-insurance of a single policy? This distinction would rest only on the narrow foundation of the use of the plural number in the phrase "holders of the policies." This does not satisfy the mind, for the plural is often conveniently used to include the singular. Nor does the context jar with the opposite construction. The antecedent words, "the re-insurance of any * * * outstanding risks," may well be understood to cover the case of the re-insurance of any single outstanding risk. One is certainly at least two-thirds of one, just as two are at least two-thirds of two and as three are at least two-thirds of four. There can be no substantial reason for discriminating between a re-insurance of one policy and a re-insurance of two policies. Our conclusion on this branch of the case is that the contracts sued on, upon a strict but reasonable interpretation of the statute, are within it, although they re-insure but a single policy obligation.

Again, it is insisted that these contracts, even if they seem to be covered by a somewhat literal reading of the statute, are yet outside of its policy and purpose. In order to place this proposition clearly before the mind, it is well to quote the following passage from the brief on behalf of the plaintiff in error: "The sixty-sixth section clearly contemplates some re-arrangement of the relationship between the original insured and the original insurer; if it does not intend clearly to imply that, it is only to apply to cases in which the re-insuring company assumes, by novation, the position of

insurer.   Otherwise, the language and provisions are meaningless.   If the re-insurance contract contemplatèd did not and could not affect the agreement and relationship between the original parties, the policyholders whose ' policies were proposed to be re-insured' would have no interests requiring protection."   This argument is founded on an accurate view of the law of re-insurance, and might have much force if addressed to the legislature as an inducement to make the statute somewhat different from what it is.   A court, in discharging the duty of interpretation, must be cautious in giving effect to considerations of this˘ nature.   It is true that the original policyholder is no party to a contract re-insuring that ·policy.   As to him it is *res inter alios acta.*   *Hastie* v. *De Peyster,* 3 *Cai.* 190, 194; *Wood F. Ins.* 820.   It does not bind him, and in many cases will not even indirectly affect him.   This proposition is clearly stated in the following passage, quoted from Emerigon, in *May Ins.,* § 12 : " The original contract subsists precisely as it was made, without renewal or alteration.   The re-insurance is absolutely foreign to the first insured, with whom the re-insurer contracts no ·sort of obligation.   The risks which the insurer has assumed constitute between him and the re-insurer the subject-matter of the contract of re-insurance, which is a new contract, totally distinct from the first."

Sometimes, it is true, the contraċt superadds to the provisions for re-insurance features that, if accepted by the original policyholder, establish a direct relation between him and the re-insuring company, and give him a right of action against the re-insurer, as upon a contract made for his benefit.   *Wood F. Ins.* 821 ; *Glen* v. *Hope Mutual Life Insurance Co. of New York,* 56 *N. Y.* 379 ; *Fischer* v. *Hope Mutual Life Insurance Co. of New York,* 69 *Id.* 161 ; *Johannes* v. *Phenix Insurance Co.,* 66 *Wis.* 50.   But, of course, no such new relation can be established without the assent of the₌ original policyholder, for one party to a contract cannot, by any bargain that he may make with a third person, deprive the other party of his right to rely on his own agreement.   Chief Justice Ruger

makes some valuable remarks on this phase of the subject in *People* v. *Empire Mutual Life Insurance Co.*, 92 *N. Y.* 105, 110. He says: " The circumstance that an insurance company is authorized by statute to effect an insurance upon its outstanding risks, or is permitted to discontinue its business and wind up its affairs, does not release it from any of its existing obligations. .There is no principle of law which permits an insurance company any more than a private individual by its own act to avoid the performance of its contracts, and the provisions of the statute in question were intended simply to empower an insurance company to protect itself by . voluntary engagements with others from eventual or continued loss, and do not at all concern the persons with whom it has previously contracted. An insurance company has no power to turn its policyholders against their consent over to another company, and such policyholders are under no obligation, in order to protect their legal rights, to protest against an effort to do so. The implied contract of an insurance company with its policyholders is that it will continue its business, keep on hand the funds required by law for the security of its patrons, and remain in a condition, so long as its contracts continue, to perform its obligations, and when it fails to do this it has broken its engagements."

Wherein, then, does the holder of a life insurance policy require protection against re-insurance? Certainly not as to his right to stand on his own contract, for of that nothing can deprive him. The danger to be averted is evidently impairment of value, making his contract less worth standing on. In what cases may this danger arise? The act of 1877, as a part of which the section under consideration was first passed, mentions one case, namely, where the assets of a company are not sufficient to re-insure its outstanding risks and discharge its total actual liabilities. A concrete illustration is afforded by the record of the civil and criminal suits that arose out of the affairs of the New Jersey Mutual Life Insurance Company. *Noyes* v. *State*, 12 *Vroom* 418 ; *S. C.*, 14 *Id.* 672 ; *Guild, Executor*, v. *Parker, Receiver*, *Id.* 430. Upon

a comparison of dates, it seems likely that the wreck of this institution prompted the passage of the act of 1877.

The existence of danger being thus made evident by experience, the subject may be supposed to have presented itself to the mind of the one hundred and first legislature somewhat in this way : Here is an evil. When all the risks of a weak company are re-insured, or when a weak company re-insures all the risks of another company, this evil will be at its maximum. When one policy only is re-insured, it will be at its minimum, or perhaps at its vanishing point. How shall a remedial statute be framed ? If it be made applicable only to a re-insurance of all the risks of a company, it will be easy to evade. If it be made applicable only to the re-insurance of a " considerable portion " of the risks of a company, it will be indefinite. If it be made applicable to not less than some specified fraction of all the risks of a company, the test of jurisdiction will be arbitrary and artificial. Where shall the line be drawn ? It seems best, on the whole, to use language so general that the statute will cover all imaginable cases, both large and small.

Thus the legislature may be thought to have reasoned, and this, at any rate, it appears to have done. It evaded the doubt where to draw a line between much and little by not drawing it at all. Shall the court now draw a line that the legislature did not draw ? If the statute is not to be interpreted according to its terms, one of two courses must be taken—the court must either interpolate some criterion of its own, or, avoiding any hard and fast line, must extend the protection of the act to any party who may seem to need it. To take either course would be not to construe a statute, but by an act of judicial legislation to make a new statute, once for all, or in each new case. It may, indeed, be that the remedy afforded by this act is more extensive than the evil. If so, the result may be set down to want of foreknowledge and to the infirmity of language ; in other words, to the difficulty of seeing what will happen and of devising a formula at once comprehensive and elastic. The details of a remedial.

enactment are committed, within constitutional bounds, to the wisdom of the legislature. If a remedy so afforded in plain terms is thought to be inapt or unreasonable, it is ordinarily not for the courts to grant relief. Except in extreme cases, governed by considerations foreign to this issue, only the power that made a statute can mend it. Our conclusion, on this branch of the case, is that inferences drawn from the general policy and purpose of this enactment do not warrant us in holding that these agreements, which are within the words of the section, are exempt from its operation.

Finally, it is urged that the agreements sued on came into existence in the city of Philadelphia, and were good at common law, and so presumably good in Pennsylvania, and hence should be enforceable here on the ground of comity. The agreements appear on their face to have been made in the city of Camden. The declaration says that the defendant, on the 10th of October, 1896, agreed in writing, "at Philadelphia, in the State of Pennsylvania, to wit, at Camden, in the county of Camden aforesaid." The locality of the agreement of March 1st, 1897, is not specified in the declaration. The inquiry is unimportant, for the defendant is a New Jersey corporation, and so, in making these contracts, was subject to our law.

The judgment is affirmed.

*For affirmance*—THE CHIEF JUSTICE, VAN SYCKEL, DIXON, LIPPINCOTT, LUDLOW, COLLINS, NIXON, HENDRICKSON, ADAMS, VREDENBURGH.   10.

*For reversal*—DEPUE, GUMMERE.   2.