HARRY VEIX, PLAINTIFF-RESPONDENT, v. SENECA BUILDING AND LOAN ASSOCIATION OF NEWARK, NEW JERSEY, DEFENDANT-APPELLANT.

Argued October 15, 1940—Decided April 3, 1941.

For the appellant, *Francis P. Meehan.*

For the respondent, *Walter P. Reilly* and *James L. Handford.*

The opinion of the court was delivered by

PERSKIE, J. Three interrelated questions of prime importance require decision in this cause.

1. By *R. S.* 17:12-53 (Source, L. 1925, c. 65, sec. 52, p. 212, as amended by L. 1932, c. 102, sec. 1, p. 175, L. 1935, c. 59, sec. 11, p. 153, L. 1936, c. 118, sec. 4, p. 295), the legislature prescribed the method and order to be employed by building and loan associations for the payment of maturities and withdrawals, and prohibited suit against such associations by any member thereof to recover the maturity or withdrawal value of his share so long as the funds in the treasury of the association are applied as required by the statute. Is this statute constitutional as applied to a member

who, as plaintiff here, gave notice for the withdrawal value of his prepaid shares prior to its passage?

2. By chapters 48, 166, 258 and 381 of *Pamph. L.* 1933, now *R. S. App.* A.:7-3 to 7, the legislature, declaring the existence of a public emergency by reason of a prolonged period of economic depression, conferred additional powers on the Commissioner of Banking and Insurance "to make orders for the purpose of conserving the assets of the building and loan associations of this state." Is this statute constitutional?

3. The Commissioner of Banking and Insurance by an order (Number One-A) made, on March 14th, 1933, in pursuance of c. 48, L. 1933, imposed restrictions and limitations upon the operation of defendant association, and prohibited suit against such association by any member thereof to recover the maturity or withdrawal value of his shares so long as the defendant association complied with this and subsequent orders of the Commissioner of Banking and Insurance, hereafter referred to as Commissioner. By this order plaintiff was prohibited from bringing his action against defendant association. Is this order constitutional?

Plaintiff, on October 7th, 1931, purchased ten prepaid shares in the defendant building and loan association. Each share had a par value of $200 and provided, *inter alia,* that it "shall bear interest at six per cent. per annum;" that it may be "called in and canceled" by defendant upon giving "thirty days' written notice to the owner upon the payment of par value and interest to date of cancellation," and that the shares may be surrendered at any time subject to the provisions of defendant's constitution and amendments thereto.

On April 19th, 1932, plaintiff gave the defendant written notice of the withdrawal of said shares in accordance with the provisions of *Pamph. L.* 1925, *ch.* 65, § 52. This statute, in existence both at the time the plaintiff purchased his shares and at the time he gave his withdrawal notice, provided, amongst other things, that "* * * in no case shall payment be postponed for a period longer than six months from the date of such notice, and any member who has given the said notice may sue for and recover the withdrawal value

of his shares in any such association in any court of competent jurisdiction, if the same is not paid in six months from the date of the giving of said notice of withdrawal * * *." Accordingly, not having been paid by defendant, plaintiff brought suit in the Supreme Court, Essex County, on June 12th, 1934, alleging defendant association's solvency and seeking judgment for $2,000 with interest, from October 7th, 1931.

Plaintiff, in his complaint, anticipated defendant's defenses, namely, that defendant was operating under *R. S.* 17:12-49 and *R. S.* 17:12-50 (Source L. 1925, c. 65, sec. 49, p. 211, as amended by L. 1932, c. 92, sec. 1, p. 161, L. 1935, c. 59, sec. 10, p. 152); and *R. S.* 17:12-53 (Source L. 1925, c. 65, sec. 52, p. 212, as amended by L. 1932, c. 102, sec. 1, p. 175, L. 1935, c. 59, sec. 11, p. 153, L. 1936, c. 118, sec. 4, p. 295). By the provisions of these amendments plaintiff, because of the financial condition of the defendant association was, for the time being, precluded from maintaining his suit for the recovery of the value of his prepaid shares. The first of these amendments (c. 102, L. 1932, p. 175), had become effective on April 22d, 1932—three days after plaintiff's notice of withdrawal. Plaintiff thus alleged, in substance, that in so far as these statutes affected his right presently to recover in accordance with L. 1925, c. 65, sec. 52, they deprived him of his vested rights, *i. e.,* they impaired the obligation of his contract with defendant association, contrary to the provisions of both the state and federal constitutions. (New Jersey Constitution, article 4, section 7, paragraph 3; United States Constitution, article 1, section 10, and the Fourteenth Amendment thereto.)

Defendant, in its answer, denied its solvency and denied that the statutes in question were unconstitutional and void. In its second defense, it asserted that the plaintiff could not recover immediately because defendant was bound by the order (Number One-A) as aforesaid. In its third defense, it alleged that the 1933 statutes were emergency measures designed to meet "the existing economic depression and public emergency which confronted building and loan associations in this state" and "were constitutional and retroactive

as to plaintiff's right of withdrawal." A fourth defense asserted that plaintiff was bound by an amendment to the constitution of the defendant association which was passed on November 16th, 1936, and which provided for payment of shares in accordance with the provisions of the General Building and Loan Association act. Defendant also reserved its right to move to strike the complaint at the trial because of the failure to allege therein, a non-compliance with the statutory provisions.

Plaintiff thereupon moved to strike defendant's answer upon the grounds that it was in part sham and in part insufficient in law.

Plaintiff's motion to strike defendant's answer was granted. The Circuit Court judge, sitting as a Supreme Court Commissioner, held that chapter 102, L. 1932, impaired plaintiff's contract with defendant association and was, therefore, unconstitutional. He further held that the provisions of chapters 48, 166, 258 and 381 of L. 1933, now *R. S. App.* A.:7-3 to 7, were unconstitutional because they did not set down a sufficiently definite standard for the making of rules by the Commissioner of Banking and Insurance; and that since order Number One-A was based on one of those statutes (chapter 48, L. 1933), it was also unconstitutional. In denying a motion for a re-argument, the judge amplified his reasons but adhered to his original determination. Accordingly, he entered a rule striking defendant's answer and separate defenses. A judgment on that rule was entered for the plaintiff in the sum of $2,893.33 plus costs of $63.94. Defendant appeals.

1. We desire, at this point, to make the observation that in the recent case of *Veix* v. *Sixth Ward Building and Loan Association,* 123 *N. J. L.* 356; 8 *Atl. Rep.* (*2d*) 350; *affirmed,* 310 *U. S.* 31, 37; 60 *S. C.* 792; 84 *L. Ed.* 1061, 1065, the Supreme Court of the United States in sustaining the constitutionality of chapter 102, L. 1932, expressed the following caveat: "The question of the applicability to withdrawals of statutes on the subject which were passed subsequent to the notice of withdrawal is not considered in this opinion." Plaintiff here, having purchased his prepaid shares and hav-

ing given his notice of withdrawal prior to the time when the act of 1932, *supra,* or any of the subsequent acts became effective, falls squarely within the caveat. And it is only to the extent thus indicated that the facts in the case at bar differ with those in *Veix* v. *Sixth Ward Building and Loan Association, supra,* on the question as to the constitutionality of the act of 1932, *supra,* as applied to plaintiff.

Thus in considering and determining the effect of the factual differences, as aforesaid, our task is greatly facilitated by certain recognized facts and controlling principles. We know that we are dealing with "financial institutions of major importance to the credit system of the state." We know, without detailing the facts, that building and loan associations, including defendant association, could not by reason of their depreciated assets, owing to the prolonged period of the economic depression and lack of income, meet the heavy withdrawals. We know, as plaintiff was charged with knowing, that "when he purchased into an enterprise already regulated in the particular to which he now objects, he purchased subject to further legislation upon the same topic." We know that unlike quite similar legislation involved in *Treigle* v. *Acme Homestead Association,* 297 *U. S.* 189; 80 *L. Ed.* 575, our legislation was directed towards our economic needs, towards an end which was in fact public. And we know that the "protection against the catastrophe of excessive withdrawals is, to-day, within legislative power." *Veix v. Sixth Ward Building and Loan Association (U. S.) supra.*

In light of the emphasis placed upon the stated factual differences, between the case at bar and those in *Veix* v. *Sixth Ward Building and Loan Association (U. S.), supra,* it is interesting to observe that notwithstanding the various permissive designations of shares, their status as common shares remains unchanged. *R. S.* 17:12-47 (Source L. 1925, c. 65, sec. 73, p. 222, as amended by L. 1932, c. 91, sec. 1, p. 160, L. 1935, c. 59, p. 160). But in our opinion neither the fact that plaintiff was the owner of prepaid shares, nor the fact that he gave notice before the passage of chapter 102, L. 1932, nor the combination of both circumstances, is the determinative test as to whether the statute is constitutional or unconstitutional.

We have already held that the owner of prepaid shares who gave notice of withdrawal after the statutes became effective was not by chapter 102, L. 1932, deprived of any constitutional rights. *Veix* v. *Sixth Ward Building and Loan Association, supra.* We have held likewise when the owner of installment shares gave notice of withdrawal prior to the date when the statute became effective. *Bucsi* v. *Longworth Building and Loan Association,* 119 *N. J. L.* 120; 194 *Atl. Rep.* 857. And in the case of *Rocker* v. *Cardinal Building and Loan Association,* 13 *N. J. Mis. R.* 397; 179 *Atl. Rep.* 667; *affirmed,* 119 *N. J. L.* 134; 194 *Atl. Rep.* 865, which is strikingly similar to the instant case, there were present both prepaid shares and notice of withdrawal prior to the date when the statute became effective. In that case, too, we held that the statute deprived the holder of no constitutional rights. True, each share of stock in the Rocker case recited, on its face, that the "annual *profit* of six per cent. per annum is guaranteed on these shares in lieu of all other profits payable semi-annually" and that the shares would be redeemed by the "payment of *maturity value* thereof with such guaranteed profits to the date of redemption." The use of the words "profit of six per cent." and "maturity value" instead of the words "interest at six per cent." and "par value," as in the instant case, does not constitute a sufficient basis for distinguishing the two cases, when, as here, the wording of both phrases obviously intended to, and did, in effect, convey the same meaning.

From all that has been written, it becomes increasingly clear that we have steadfastly adhered to the well recognized rule of law determinative of the constitutional exercise of the reserved police power of the state over property and contract rights. That rule of law is that every contract is made subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power. But such a result can only be effected if the exercise of the power is for an end which is in fact public and the means adopted is reasonably adapted to that end. *Cf. Indiana, ex rel. Anderson* v. *Brand,* 303 *U. S.* 95, *108-*109; 82 *L. Ed.* 685, 695, and cases cited in footnote No. 17; *Nebbia* v. *New York,*

291 *U. S.* 502; 78 *L. Ed.* 940; *Veix* v. *Sixth Ward Building and Loan Association* (*U. S.*), *supra,* (at *p.* \*44) ; 84 *L. Ed.* 1067. Contracts which relate, as here, to a subject-matter which lies within the control of the legislature, have a "congenital infirmity" of being subject to the proper exercise of the police power. Cf. Gold Clause cases—*Norman* v. *Baltimore and Ohio Railroad Co.,* 294 *U. S.* 240; 79 *L. Ed.* 885; *Nortz* v. *United States,* 294 *U. S.* 317; 79 *L. Ed.* 907; *Perry* v. *United States,* 294 *U. S.* 330; 79 *L. Ed.* 912.

We see nothing in the differences between the facts in the case at bar and those in *Veix* v. *Sixth Ward Building and Loan Association* (*U. S.*), *supra,* which should in reason and justice exempt plaintiff's contract with defendant association from its congenital infirmity. We have, moreover, already held that *R. S.* 17:12-53 and its sources are "constitutional and effective." *Sommer* v. *Workingmen's Building and Loan Association,* 125 *N. J. L.* 83, 84; 13 *Atl. Rep.* (*2d*) 793. We adhere to that holding.

2. Nor do we think that chapters 48, 166, 258 and 381, L. 1933 (now *R. S. App.* A:7-3 to 7) trench upon our constitutional prohibition against the delegation of legislative power.

The basic principles upon which our courts have rested the determination of the validity or invalidity of delegated power by the legislature are simple. The legislature may neither abdicate, nor transfer, nor assign, nor delegate, to others its exclusive function to make the law. But the legislature may select, or delegate to, some governmental instrumentality or agency or public official, the power, or function, to make findings of fact, or to make subordinate rules or orders, or both, within the defined standards and policies prescribed by it. *Cf. Paul* v. *Gloucester County,* 50 *N. J. L.* 585; 15 *Atl. Rep.* (*2d*) 272; 1 *L. R. A.* 86; *West Jersey and Shore Railroad Co.* v. *Public Utility Board,* 87 *N. J. L.* 170, 177; 94 *Atl. Rep.* 57; *State Board of Milk Control* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504, 521, 522; 179 *Atl. Rep.* 116; *Marshall Field & Co.* v. *Clark,* 143 *U. S.* 649; 36 *L. Ed.* 294; *Buttfield* v. *Stranahan,* 192 *U. S.* 470; 48 *L. Ed.* 525; *United States* v. *Grimaud,* 220 *U. S.* 506; 55 *L. Ed.* 563; *Red "C"*

*Oil Manufacturing Co.* v. *Board of Agriculture,* 222 *U. S.* 380; 56 *L. Ed.* 240; *J. W. Hampton, Jr., & Co.* v. *United States,* 276 *U. S.* 394; 72 *L. Ed.* 624; *Panama Refining Co.* v. *Ryan,* 293 *U. S.* 388; 79 *L. Ed.* 447. The application of these principles to the facts of each particular case is, however, not so simple.

The traditional policy of the state and the historical growth of that policy often serve as helpful factors to determine whether the delegation in question constitutes an abandonment of legislative power or whether a sufficiently defined standard was provided.

The policy of our state, so far as the regulation of building and loan associations is concerned, and the historical growth of that policy, are clearly revealed by an examination of the many and varied legislative enactments. Such examination clearly indicates that the administration of the laws affecting building and loan associations has been invariably regarded as belonging to that "multitude of governmental duties" which has never been and can not possibly be performed by the legislature. *Cf. Paul* v. *Gloucester, supra* (at *p.* 611) ; *Iowa Life Insurance Co.* v. *Eastern Mutual Life Insurance Co.,* 64 *N. J. L.* 340, 347, 348; 45 *Atl. Rep.* 762.

Accordingly, the legislature has delegated that function to the Secretary of State, then to the Commissioner with the Chancellor and lastly, by the acts now in question, to the Commissioner alone (L. 1891, c. 6, sec. 5, p. 17, L. 1903, c. 218, p. 473, L. 1925, c. 65, sec. 58, p. 189, L. 1933, chs. 48, 166, 258 and 381, now *R. S. App.* A :7-3, *et seq.*). This delegation has, in the past, embraced many phases relating to building and loan associations—their "formation, membership, powers, investments, report, liquidation, foreign associations and reports." *Veix* v. *Sixth Ward Building and Loan Association (U. S.), supra.*

By the legislation here in question the legislature has additionally empowered the Commissioner to make orders (a) to regulate the method of paying the withdrawal and maturity value of shares; (b) to regulate or postpone the filing of applications for withdrawals of shares and of requests for payment of maturity value of shares; (c) to regulate or

postpone the payment of all or any part of the maturity value or of the withdrawal value of shares; (d) to require any or all such associations to establish additional reserves or increase present reserves and to regulate all reserves and to prescribe the manner in which such reserves shall be established; (c) to regulate, allocate, prohibit or postpone the receipt or disbursements of funds by any such associations; (f) to effect such changes or reorganizations in the business as he shall deem necessary or proper; and (g) to appoint conservators to assist him in the operation of such associations, &c. But the order when so made by the Commissioner must, in accordance with the express interdict of the statute, be made "for the purpose of conserving the assets of building and loan associations in this state."

The powers thus conferred upon the Commissioner, and the objective sought to be attained, are altogether in accord with the fixed policy of the state—to protect the activities and safety of building and loan associations; to safeguard the interests of those who deal with such associations; and to delegate or entrust the administration of that policy, pursuant to a definite standard, to the Commissioner of Banking and Insurance. The Commissioner was administering the policy of the state which affected some 1,500 associations, operating throughout the state, and whose assets were in excess of one billion of dollars. He was entitled to a measure—a full measure—of reasonable discretionary leeway. The criterion, or standard prescribed to govern his orders was as definitely described as was "reasonably practicable" under the necessities of the circumstance. That is sufficient. *Cf. Buttfield* v. *Stranahan, supra,* *496 L. Ed.* 536. The challenged legislation is constitutional. *Sommer* v. *Workingmen's Building and Loan Association, supra.*

3. Nor is the order Number One-A made by the Commissioner on March 14th, 1933, unconstitutional. We have already stated its general purport, and it will serve no useful purpose to state its provisions in detail. Suffice to observe that, in our opinion, the order falls squarely within the scope or ambit of the legislation upon which it is bottomed. There is no merit to the argument that the order is fatal because of

the provisions of the statute that orders made thereunder "shall have the same force and effect as law and be binding on any * * * and all building and loan associations of this state." The statute merely expressed the inherent attributes of a valid order made by an administrative officer.

A valid order made by an administrative officer, even to the extent of imposing prescribed valid statutory penalties, is legal and binding. *Cf. State Board of Milk Control* v. *Newark Milk Co., supra; United States* v. *Grimaud, supra.* Since the order is within the scope or ambit of valid legislation, it is lawful and binding on defendant association and would have been so even if the legislation were silent as to the effect of orders made thereunder. The order is free from constitutional infirmity.

While we have considered all other points, they merit no comment.

Accordingly, the judgment is reversed, with costs; the cause will be remanded to the court below there to be treated consistently with this opinion.

*For affirmance*—PARKER, HEHER, WOLFSKEIL, JJ. 3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, DONGES, PERSKIE, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, JJ. 11.