THOMAS F. McCRAN, ATTORNEY-GENERAL, RESPOND-
ENT, v. BOROUGH OF OCEAN GROVE, IN THE COUNTY
OF MONMOUTH, APPELLANT.

Argued March 2, 1921—Decided May 12, 1921.

1. A limitation upon the exercise of the powers conferred upon
a municipality by general laws is embraced within the title
of an act entitled "An act to incorporate the borough of Ocean
Grove, in the county of Monmouth."

2. The legislature has the power to change, revoke or modify
governmental functions conferred upon a corporation by its
charters, and may create a new municipal agency of the state
to take over and exercise them.

3. A grant of partial exemption from taxation, contained in the
charter of a corporation, does not confer a right which is
vested in the corporation in the sense that it cannot be taken
away by subsequent legislation.

4. Although the constitutional mandate prohibiting the enactment
of private, local or special laws regulating the internal affairs
of municipalities does not bar the legislature from creating a
municipality by a special law, it prohibits it from materially
differentiating its new creation from the body of municipalities
of the same class in the conferring upon it of governmental
powers.

5. An act is equally special whether it confers upon a single
municipality substantial powers in addition to those possessed
by other municipalities of the same class; or whether, as to
a single municipality, it places substantial restrictions and
limitations upon powers conferred while like powers are en-
joyed by other municipalities of the class free from such re-
strictions and limitations; or whether it confers only some,
but not all, of the substantial powers enjoyed by other munici-
palities of the same class.

6. The act to incorporate the borough of Ocean Grove, in the
county of Monmouth (Pamph. L. 1920, p. 190), is special leg-
islation regulating the internal affairs of the municipality, and
therefore unconstitutional.

On appeal from the Supreme Court, whose opinion is
reported in 95 N. J. L. 379.

On quo warranto proceedings instituted by the attorney-
general.

For the appellant, *Richard W. Stout, Charles E. Cook* and *Edmund Wilson.*

For the state, *J. Chester Massinger, Ward Kremer* and *Robert H. McCarter.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The information filed by the attorney-general challenges the constitutionality of an act of the legislature entitled "An act to incorporate the borough of Ocean Grove, in the county of Monmouth," passed April 5th, 1920. *Pamph. L., p.* 190. The purpose of this statute is to establish a borough government in the territory known as Ocean Grove, a seaside resort owned and controlled by a corporation created by a special act of the legislature entitled "An act to incorporate the Ocean Grove Camp Meeting Association of the Methodist Episcopal Church," approved March 3d, 1870. *Pamph. L., p.* 397.

The grounds of attack upon the statute, both in the Supreme Court and before us, are (1) that the title of the act does not express its object, and is therefore violative of the provision of article 4, section 7, subdivision 4, of the constitution of this state, which declares that "To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in its title;" (2) that the act infringes upon and destroys certain vested rights of the Ocean Grove Camp Meeting Association; (3) that the act violates the provision of subdivision 11 of said section, which prohibits the enactment of special or local laws regulating the internal affairs of municipalities.

This case was considered of such public importance, not only by counsel, but also by the Supreme Court, that a special session of that tribunal was held for the purpose of hearing and determining the questions involved; and the Supreme Court, in order that a review of its decision might be had by us at our present March term, disposed of the

case upon the third of the grounds presented, considering that, as that ground of attack upon the statute was entirely justified, it was not necessary for it to pass upon the other contentions submitted by the attorney-general. That the cause is one of considerable public importance is apparent, and as each one of the matters raised by the information is of public interest, and as they have been carefully and thoroughly argued by counsel, we deem it advisable to express the views which we hold with relation to them.

Taking up the first point argued, namely, that the title of the statute does not comply with the constitutional requirement. The body of the act, after declaring that the borough created by it shall be a body politic, incorporate in fact and in law, provides that it shall be governed by the general laws of the state relating to boroughs, with certain specified exceptions, among which are (1) that the streets of the borough shall not be used for the purpose of vehicular travel on Sunday, and that gates shall be erected at the entrance to all streets leading within the borough limits for the prevention of such travel, which gates shall be closed from twelve o'clock Saturday night until midnight of the Sabbath day; and that the borough authorities shall not have power, by ordinance, resolution or otherwise, to encroach upon or change these restrictions as to Sunday travel; and (2) that the borough shall not give, by ordinance, resolution or otherwise, any authority to build or construct a state, county or municipal boulevard through any of the territory of the borough. The argument is that these restrictions upon the power of the governmental body are not expressed in the title of the act. But they are to be read in connection with the general enabling provision, that the newly-created borough is to be governed by the general laws of the state relating to boroughs, except in the particulars specified. The general laws referred to vest in the governing body of each of the boroughs of this state the full control over and regulation of the streets and highways of the municipality, including the power to open new streets at its discretion; and a limitation upon the exercise of the powers thus broadly conferred is as fully

embraced in the title of the act as is the conferring of the powers themselves. That a general title is comprehensive enough and specific enough to include the grant of such powers has, I think, never been questioned since the decision in *Walter* v. *Town of Union*, 33 *N. J. L.* 350, 354, where it is said, "The validity of acts with general titles has been so long recognized by our courts that it cannot now be questioned that under the title 'An act to incorporate the town of ————' a government for the town could be established, including taxation for its support, courts for the trial of offenders, authority for laying out streets, building sewers and making assessments. Under any other rule it would be impossible to organize a city government without a large number of distinct acts;" and that to hold otherwise "would be to annul a large portion of the legislation of this state." In our opinion, the statute is not open to the objection that it violates the constitutional provision, the scope of which we have been considering.

The contention that the act interferes with or destroys certain vested rights of the Ocean Grove Camp Meeting Association is, in our view, also without merit. The charter of that corporation, by the first section, constitutes it a body corporate and politic. The second and third sections authorize it to purchase and hold such real and personal estate as it may deem necessary or desirable for the purposes and objects of the corporation; to construct and provide all necessary works to supply the territory acquired by it with water and artificial light; and to provide all other conveniences and make all other improvements which it may deem necessary or desirable. The fourth, fifth and seventh sections provide for the creation of a board of trustees, which is made self perpetuating, and is given power to pass and enforce such by-laws as it may deem needful and to appoint such peace officers as may be deemed requisite for the purpose of keeping order within the territory of the association, such officers being clothed with the same power, authority and immunities as constables, including the power to enforce obedience to any rule or regulation of the trustees for the

preservation of quiet and good order, for the suppression
of vice and immorality, and for the purpose of preventing
disturbances at meetings held for religious worship. The
sixth section provides that all the real and personal property
of the corporation, not exceeding the annual value of five
thousand dollars, shall be exempt from assessment and taxa-
tion. All the rights, powers and privileges vested in the
Ocean Grove Camp Meeting Association are contained in the
provisions of its charter, which we have referred to. Just
which of the rights thus conferred the attorney-general con-
siders to have become vested and beyond the power of the
legislature to infringe is not made clear to us by the argu-
ment. The acquisition of real and personal property and
the enjoyment thereof is not at all affected by the act creating
the borough of Ocean Grove. The ownership of works con-
structed for the purpose of supplying the lands acquired by
the Camp Meeting Association under its charter with water
and artificial light is not divested, nor is its title to such
other improvements as it has made within the territory
attempted to be taken from it and vested in the borough.
So far as its governmental functions are concerned—that is,
its power to lay out streets, to regulate the traffic thereon,
to repair them when repairs may become necessary; its
right to pass by-laws for the preservation of peace and good
order within the territory, and to appoint officers to enforce
the provisions of those by-laws and of the general laws of
the state passed for the same purpose; its right to elect or se-
lect the officers clothed with authority to exercise these govern-
mental functions—we think it clear that they are not beyond
the power of the legislature to change, revoke or modify by
creating a new municipal agency of the state to take over
and exercise them. This was decided by the Supreme Court
as early as 1854 in the case of *Paterson* v. *The Society for
Establishing Useful Manufactures*, 24 *N. J. L.* 385, and the
soundness of the doctrine then promulgated has, so far as
our observation goes, never since been challenged. Nor is
the right to be partially exempt from taxation one which
is vested in the corporation in the sense that it cannot be

taken away by subsequent legislation. It was so decided by this court in the case of *Little, Receiver, v. Bowers,* 46 *Id.* 300; *S. C. on appeal,* 48 *Id.* 370. In that case it was declared that, since the passage of the act of February 26th, 1847 (section 4 of our present Corporation act; *Comp. Stat., p.* 1600), the provision contained therein that the charter of every corporation which should thereafter be granted should be subject to alteration, suspension and repeal, in the discretion of the legislature, was to be considered as embodied in every corporate charter thereafter passed unless a purpose to exclude it be perceived; that a provision partially exempting the property of the corporation from taxation, without more, exhibited no such purpose; and that consequently such a provision was repealable. This declaration has been accepted as settling the law on the question and has been consistently followed both by the Supreme Court and this tribunal.

As to the remaining contention, namely, that the act is in violation of the constitutional mandate prohibiting the enactment of private, local or special laws regulating the internal affairs of municipalities, we concur in the conclusion reached by the Supreme Court that the statute violates this provision; and have very little to add to what was said in the opinion of that tribunal. Although, as we declared in the case of *Miller* v. *Greenwalt,* 64 *N. J. L.* 722, the legislature is not barred by this constitutional provision from *creating* a municipality by a special law, it cannot materially differentiate its new creation from the body of municipalities of the same class, in the conferring upon it of governmental powers. In our view, an act is equally special whether it confers upon a single municipality substantial powers in addition to those possessed and enjoyed by other municipalities of the same class; or whether, as to a single municipality, it places substantial restrictions and limitations upon the powers conferred while like powers are enjoyed and exercised by other municipalities of the class free from such restrictions and limitations; or whether it confers upon the municipality only some—but not all—of the substantial powers enjoyed and exercised by other municipalities of the

same class. That it *regulates* the internal affairs of such municipality is obvious.

That the restriction contained in the present act upon the power of the borough government to regulate and control the use of the streets within its territorial limits, and to construct new streets therein at its discretion, materially differentiates this borough from the others of the class seems to be practically conceded by counsel for the appellant; but it is argued that this fact does not justify a judicial declaration that the entire statute is a nullity, for the reason that it is the duty of the court, whenever unconstitutional features appear in a statute, to excise them and sustain what is left of the statute when the objectionable feature is separable as a distinct thing from the body of the act, and there is no reason to suppose that the portion thus eliminated constituted an essential motive to the enactment of the statute. The soundness of the abstract proposition is conceded, but the test to be used in determining whether the principle has application to a given statute, is this: does it clearly appear that the unconstitutional feature of the statute did not constitute an essential motive to its enactment? *Hann* v. *Bedell,* 67 *N. J. L.* 148; *Riccio* v. *Hoboken,* 69 *Id.* 649. The preamble to the present statute, after reciting that the Ocean Grove Camp Meeting Association had instituted and established a camp meeting and Christian seaside resort, and was not only a religious institution, but was also exercising the prerogatives and functions of a municipal government, then proceeded as follows: "Whereas the said association is willing to surrender such municipal control, but without violating the religious integrity of Ocean Grove, and is also desirous of preserving inviolate all those rights appertaining to and included in such religious integrity; and whereas it is deemed advisable to separate the municipal and religious functions *except as this act provides* * * * and whereas it is the purpose and intent of this act so to do; therefore, be it enacted" &c. The mere reading of these recitals, as it seems to us, demonstrates that one of the controlling motives which influenced the legislature in the enactment of the

statute under review, was the preservation in the newly-
created borough, among other things, of so much of the
religious integrity of the earlier municipality as was exhibited
in its action in keeping its streets free from Sunday travel
and in preventing any public highway or boulevard from
passing through its territorial limits. In this situation the
judicial excision of these features of the statute would in
effect impose upon the people of the state a law which the
legislature itself never would have passed. It is hardly nec-
essary to add that in doing so this court would not be exer-
cising a judicial but would be usurping a legislative function.

The judgment under review will be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE,
TRENCHARD, BERGEN, KALISCH, KATZENBACH, WHITE,
HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, JJ. 11.

*For reversal* — None.