55 N.J. Super. 523 (1959)
151 A.2d 208
DONALD SARNER, ETC., ET AL., PLAINTIFFS,
v.
TOWNSHIP OF UNION (UNION COUNTY), ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 7, 1959.
*527 Messrs. Clancy & Hayden (Mr. John J. Clancy, appearing), and Messrs. Stoffer & Jacobs (Mr. David Stoffer, appearing), attorneys for plaintiffs.
Mr. David B. Furman, Attorney General of New Jersey (Mr. David M. Satz, Jr., Deputy Attorney General, appearing).
Mr. Vincent P. Torppey, Corporation Counsel (Mr. Joseph A. Ward, Assistant Corporation Counsel, appearing), attorney for City of Newark.
Mr. Gustave G. Kein, Jr., attorney for Township of Union.
Mr. Walter Michaelson, attorney for town of Harrison.
Mr. Nathan Duff, attorney for Township of Woodbridge.
Mr. Murray Fredericks, City Solicitor (Mr. Chaim H. Sandler, Associate City Solicitor, appearing), attorney for City of Atlantic City.
Mr. Isaac C. Ginsburg, attorney for Greater Atlantic City Chamber of Commerce.
*528 Messrs. Wolf & Baumann (Mr. George J. Baumann, appearing), attorneys for Citizens Committee for Sunday Closing in New Jersey, Inc.
Mr. Arnold Tanner, attorney for Clifford E. Schneider, et al., t/a Collingwood Park Auction Market.
SCHERER, J.S.C.
Plaintiffs, who are the owners of numerous retail stores located in various municipalities in several counties of this State, filed a complaint in lieu of prerogative writ and for declaratory judgment to test the validity of chapter 138 of the Laws of 1958, which was signed by the Governor and became effective on August 4, 1958. This act, which is now N.J.S. 2A:171-5.1 to 5.7, makes it unlawful, except in certain counties, to sell or offer to sell on Sunday certain merchandise described in the statute. The defendants are the various municipalities in which the plaintiffs have their retail outlets, and the Attorney General of New Jersey (R.R. 4:37-2). The statute under consideration provides in section 4 that it is to be construed as an additional remedy to secure proper observance of Sunday. See N.J.S. 2A:171-1.
Upon the filing of the verified complaint, an injunction was issued restraining the defendants from enforcing the penal provisions of the statute until the further order of this Court. The injunction is still in effect. R.R. 4:67.
Several municipalities  in addition to those named in the original complaint  including the City of Atlantic City, and various civic groups, including the Greater Atlantic City Chamber of Commerce and the Citizens Committee for Sunday Closing in New Jersey, Inc., were permitted to intervene in order that all facets of the Sunday closing problem could be presented and argued.
After the case was at issue several pretrial conferences were held, as a result of which counsel agreed that after discovery had been completed the matter should be brought on for hearing upon the plaintiffs' motion for summary *529 judgment, with a similar cross-motion by the Attorney General, acting on behalf of all defendants. The arguments presented by the Attorney General were joined in by all defendants, with the exception that several defendants disagreed with him as to the severability of section 5 from the balance of the statute. This problem is discussed in detail hereafter.
A brief statement of the course of this act through the Legislature will shed light upon the legal problems arising from its enactment. The statute was introduced as Assembly Bill No. 22 on January 14, 1958. After passage in the Assembly, the bill went to the Senate, where it was subjected to several significant changes. By Senate committee amendments, adopted May 5, 1958, the title was amended to insert the words "in certain counties"; the preamble was eliminated entirely; section 5 was added, providing that the act should be inapplicable to counties bordering on the Atlantic Ocean having a population of less than 225,000; and the numbering of certain sections was changed to accommodate the new section. On May 12, 1958 the Senate amendments adopted May 5 were directed to be omitted, but the same amendments with respect to the change in the title, the elimination of the preamble, and the insertion of section 5, were readopted and, in addition, there was added to the list of merchandise in section 1, the sale of which was prohibited, "building and lumber supply materials," and a new section, number 6 of the present statute, was inserted. This provided that if any phrase, clause, sentence or provision of the act was declared unconstitutional, the act as a whole should be unconstitutional. With these latter amendments, the bill was finally adopted and was signed into law by Governor Meyner on August 4, 1958, effective immediately.
Prior to signing, the Governor issued a press release in which it was stated that he believed it necessary and desirable, in the public interest, that he make some observations in connection with his signing of Assembly Bill No. 22, commonly *530 referred to as the "Sunday Closing" bill. He said that he believed the bill should become law even though it suffered from a number of defects. He pointed out that the exclusion of counties bordering on the Atlantic Ocean with a population of less than 225,000, which category embraced only three counties, namely, Atlantic, Cape May and Ocean, appeared to him to be a special exemption which was unreal and illusory and denied equal protection of the law, and that there was also confusion with respect to section 6, providing for non-severability, and section 7, which provided that if any section of the act be declared invalid, the remainder of the act should be valid and effectual. He pointed out that he was signing the bill because he believed that, if he applied a conditional veto to it, the bill probably would not again be enacted into law, since it was doubtful that the three exempt counties, through their Senate representatives, would consent to the elimination of the section 5 exemption, but he was hopeful, if it were signed into law, that the Legislature would promptly amend the bill to eliminate the conflicting and invalid provisions.
No amendment to the law has since been enacted, and L. 1958, c. 138, remains unchanged.
Assembly Bill No. 22 stated in its title originally that it was "An Act concerning the observance of the first day of the week, commonly known as Sunday, and providing penalties * * *." By the Senate amendments there were added, after the word "Sunday," the words "in certain counties."
The preamble to Assembly Bill No. 22, which was eliminated by the Senate amendments, stated as follows:
"Whereas, The sale and offering for sale on Sunday of certain goods, wares and merchandise is adversely affecting the proper observance of Sunday and is causing traffic congestion and an undue interference with the peace and quiet of Sunday and with the health, safety and general welfare of the people of the State; now, therefore, * * *."
*531 The original Assembly Bill No. 22 contained no section similar to present section 5, and the act as introduced was obviously intended to affect all citizens in all counties of this State.
By its amendments the Senate indicated that it was not prepared to accept a bill as comprehensive as that approved by the Assembly. This was recognized by the Governor in his press release above referred to. Apparently in an effort to prevent the bill from affecting the counties of Atlantic, Cape May and Ocean if section 5 should be declared unconstitutional, thereby making the act effective as to all counties in the State, the non-severability section 6 was added. Whether through oversight or by design, the act as finally passed contained both the non-severability provision (section 6), inserted by the Senate, and the severability clause contained in the original Assembly bill, which became section 7 in the act as finally approved.

I.

DOES THE EXCLUSION OF ATLANTIC, CAPE MAY AND OCEAN COUNTIES REQUIRE THAT L. 1958, c. 138, BE DECLARED UNCONSTITUTIONAL?
This statute is another in a series of legislative enactments designed to deal with the problem of regulating commercial activity on Sunday. Historically, as early as 1704 there was passed in New Jersey "An Act for suppressing of immorality." For a discussion of the history of the legislation, see State v. Maier, 13 N.J. 235, 261 (1953); 12 Rutgers L. Rev. 505.
Prior to the adoption of L. 1958, c. 138, the statute controlling the conducting of business and employment on Sunday was N.J.S. 2A:171-1, which states simply that no worldly employment or business, except works of necessity and charity, shall be performed or practiced on Sunday within this State. There is no penalty provision in that statute, it having been removed when the former statute, R.S. 2:207-1, was revised. See Judge Clapp's foreword to *532 Title 2A. This statute, both in its original version and as revised, applied uniformly throughout the State. The statute under consideration limits its applicability to "certain counties" in the State. In those counties affected, the sale, at wholesale or retail, of certain items enumerated in section 1 is prohibited and severe penalties are prescribed for violations.
The plaintiffs contend that the act is unconstitutional, in that it is discriminatory and in violation of the equal protection clause of the Fourteenth Amendment of the Federal Constitution and the provisions of Art. I, par. 1, of the New Jersey Constitution of 1947, as well as Art. IV, Sec. VII, pars. 8 and 9.
The statute was adopted as a general law. A general law is defined as one in which the provisions embrace the whole of a subject and the subject matter is of common interest to the whole State. The uniformity that is required is to prevent the granting to any person, or class of persons, the privileges or immunities which upon the same terms do not belong to all persons. 2 Sutherland, Statutory Construction (3d ed., Horack), sec. 2102, p. 9.
Apt language defining a special law is found in Koons v. Board of Com'rs of Atlantic City, 134 N.J.L. 329 (Sup. Ct. 1946), affirmed per curiam 135 N.J.L. 204 (E. & A. 1947), where the Supreme Court in its opinion said, 134 N.J.L. at page 333:
"Ordinarily, the exclusions from the statutory class are determinative of the generality of the act in constitutional intendment. `A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes.' Budd v. Hancock, 66 N.J.L. 133. And, in resolving the question, the substance and practical operation rather than the form of the statute control. Alexander v. City of Elizabeth, 56 N.J.L. 71."
See also, In re Freygang, 46 N.J. Super. 14 (App. Div. 1957), affirmed 25 N.J. 357 (1957).
*533 Persons situated alike must be treated alike. Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229 (1952); 12 Am. Jur., sec. 557, p. 251; In re Van Horne, 74 N.J. Eq. 600 (Ch. 1908); Galloway v. Wolfe, 117 Neb. 824, 223 N.W. 1, 62 A.L.R. 637 (Neb. Sup. Ct. 1929).
There is nothing in chapter 138 to reveal the reason for the exclusion of the counties of Atlantic, Cape May and Ocean from its provisions. The preamble, which was elided by the Senate amendments, provides no clue, and the bill even as originally introduced had no appended statement of purpose. Thus, the court is without this aid which is often helpful in ascertaining legislative intent. Magierowski v. Buckley, 39 N.J. Super. 534 (App. Div. 1956); Deaney v. Linen Thread Co., 19 N.J. 578 (1955).
It has been said that the courts will not pass judgment upon the wisdom of the Legislature in enacting a law, but will only ascertain if the Legislature has kept within its powers. State v. Garden State Racing Ass'n, 136 N.J.L. 173 (E. & A. 1947). This case also holds that the Legislature has broad powers to classify and, so long as the benefits derived and the burdens imposed bear alike upon every one within the class and the classification can be justified upon any reasonable theory, it cannot be declared a violation of any constitutional provision. But such classification must have some reasonable and just relation either to the general object of the legislation or to some substantial consideration of public policy or convenience or service to the general welfare. Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949). It must not be illusory. Arbitrary selection can never be justified by calling it classification. The equal protection required by the Fourteenth Amendment forbids this. Gulf, C. & S.F.R. Co. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1897). The court in the Washington National case, supra, 1 N.J. at page 554, pointed out that care must be exercised that the efficacy of constitutional guaranties shall not be whittled away by indulging *534 in unwarranted presumptions of a factual basis for the legislation.
While equal protection does not foreclose reasonable legislative classification, the classification must be non-discriminatory and bear a reasonable relationship to the general object of the legislation. N.J. Restaurant Ass'n v. Holderman, 24 N.J. 295 (1957); Pierro v. Baxendale, 20 N.J. 17 (1955); De Monaco v. Renton, 18 N.J. 352 (1955).
The Attorney General cites the last two cases and Gundaker Central Motors v. Gassert, 23 N.J. 71 (1956), appeal denied 354 U.S. 933, 77 S.Ct. 1397, 1 L.Ed.2d 1533 (1957), as examples of classifications set up by the Legislature which have been sustained although they affected some persons within the State but not others. See also, Robson v. Rodriquez, 26 N.J. 517, 524 (1958). But in all of these cases the classifications made were applicable, and the classes affected were uniformly affected, wherever situate within the State. The classifications bore reasonable and just relationship to the general object sought to be achieved by the legislation.
For example, in the N.J. Restaurant case, the classification made by the Commissioner of Labor and Industry, pursuant to N.J.S. 34:11-34 et seq., was uniform as to all persons within the class wherever they might be employed throughout the State. Similarly, in the Gundaker case, the sale of all motor vehicles on Sunday was banned throughout the entire State. In contrast, in the De Monaco case, N.J.S. 34:15-36 was held unconstitutional as setting up an unreasonable classification where persons employed in selling newspapers were excluded from the protection of the Workmen's Compensation Act.
In Hartford Steam Boiler Inspection & Insurance Co. v. Harrison, 301 U.S. 459, 462, 57 S.Ct. 838, 81 L.Ed. 1223, 1226 (1937), it was said that discriminations are not to be supported by mere fanciful conjecture, and that they cannot stand as reasonable if they offend the plain standards of common sense.
*535 But quite apart from the constitutional equal protection consequences, the statute must not offend as special legislation. In Clark v. Cape May, 50 N.J.L. 558, 560 (Sup. Ct. 1888), the court said that the taking of a class out of the general terms of a statute by exception is obviously as obnoxious to the restraint put on legislation by the Constitution as if a special act were passed.
An act may be unconstitutional as special legislation where the classifications established there are illusory rather than substantial. Foley v. City of Hoboken, 61 N.J.L. 478, 483 (Sup. Ct. 1898).
In the field of criminal law it is well established that the Legislature, though vested with a large measure of discretion in creating and defining penal offenses, must exercise its power in such manner that the statute creating the offense will operate without discrimination on all persons and classes of persons similarly situated. Levine v. State, 110 N.J.L. 467 (E. & A. 1933); State v. Western Union Telegraph Co., 13 N.J. Super. 172 (Cty. Ct. 1951).
The penal provisions of L. 1958, c. 138, do not operate without discrimination on all persons and all classes of persons similarly situated because those acts which are interdicted by the statute in 18 counties of the State are lawful in three. It has been said that "it is beyond the legislative power to enact a general law for the punishment of a crime within the state, and then make the same criminal act non-punishable if perpetrated in certain favored localities." 12 Am. Jur., Constitutional Law, sec. 557, p. 252; State v. Walsh, 136 Mo. 400, 37 S.W. 1112, 1114, 35 L.R.A. 231 (Mo. Sup. Ct. 1896).
As illustrative of this rule, in Galloway v. Wolfe, supra, a statute penalizing public dancing on Sunday, except in "cities of metropolitan class," was held unconstitutional as discriminatory and creating a classification without legal basis; in Woolley v. Mears, 226 Mo. 41, 125 S.W. 1112, 1114 (Mo. Sup. Ct. 1910), a statute making it a misdemeanor in cities having a population of 300,000 or more to offer *536 to sell real estate without the written authority of the owner was held unconstitutional as a special law, since the population classification was found to be unreasonable, although the court indicated that the statute would be valid if applied to all cities and all persons throughout the state; in State v. Harris, 216 N.C. 746, 6 S.E.2d 854, 128 A.L.R. 658 (N.C. Sup. Ct. 1940), where a statute required licenses for dry cleaning establishments in certain counties of the state but not in others, it was held invalid as an arbitrary classification; in Cody v. Dempsey, 86 App. Div. 335, 83 N.Y.S. 899 (App. Div. 1903), a provision of the New York Penal Code, making it a misdemeanor in cities of the first and second class to offer real estate for sale without the written authority of the owner, was held unconstitutional as an arbitrary classification. Many other cases might be cited, but these are sufficient to indicate the uniformity with which courts throughout the country have struck down legislation under the terms of which an act, valid when done by a person within a geographical area within the state, is invalid or criminal when done in other parts of the state.
In this State, in Marie's Launderette v. City of Newark, 35 N.J. Super. 94 (App. Div. 1955), an ordinance of the City of Newark was declared unconstitutional which prohibited pickups from and deliveries to commercial launderettes, but which did not in the same business district prohibit pickups from and deliveries to other commercial enterprises. This, the court held, was clearly discriminatory and constituted as to the plaintiff a denial of due process and the equal protection of the law.
L. 1958, c. 138, regulates the conduct of the people. It is fundamental in our concept of constitutional government that there be equality of treatment for all persons without favor. This statute does not bring about that result. Its effect is to make criminal, acts performed on Sunday by the citizens of 18 counties, while granting immunity for the same acts to the citizens of Atlantic, Cape May and Ocean Counties.
*537 A classification which by its terms applied only to two counties, Ocean and Cape May, was held to be unconstitutional in Dover Township v. Van Kirk, 123 N.J.L. 507 (Sup. Ct. 1939). There the statute authorized the granting of liquor licenses by the judges of the courts of common pleas in sixth-class counties, which were so classified by population and proximity to the Atlantic Ocean. Only Ocean and Cape May were in that classification. It was argued that the classification was arbitrary and rested upon distinctions which were illusory and not substantial. The court, in holding the act unconstitutional, pointed out that while Sussex County had a smaller population, its municipalities were not precluded from granting liquor licenses, and no valid reason had been shown why in Ocean and Cape May Counties it was necessary that the licenses be granted by the judges of the courts of common pleas, rather than the local governing bodies. The court said, 123 N.J.L. at page 509,
"Although the regulation of the sale of liquor is within the police power of the state, there is no apparent reason why the problem in Ocean and Cape May counties is different from the problem in adjoining counties bordering on the Atlantic Ocean."
The defendants here argue that the classification in this case is made because "the economies of Atlantic, Cape May and Ocean counties are depressed as compared to the economies of the other 18 counties in this State and, being more dependent upon retail trade and services than are the economies of the other 18 counties, would be too severely affected by Chapter 138." This argument, if true, overlooks the fact that without chapter 138 sales at retail in the municipalities of the three counties could be validly prohibited since, under N.J.S. 2A:171, these municipalities may adopt ordinances making such sales illegal on Sunday. The present statute added nothing to the law already in existence at the time of its passage, except to provide penalties for the sale of the merchandise specified in section 1. See Hertz Washmobile System v. Village of South Orange, 25 N.J. *538 207 (1957); Auto-Rite Supply Co. v. Mayor and Tp. Committeemen of Woodbridge Tp., 25 N.J. 188 (1957).
If the purpose of the statute is, as stated in the original preamble, to prohibit the sale or offering for sale on Sunday of certain merchandise because such sales adversely affect the proper observance of Sunday, cause traffic congestion and an undue interference with the peace and quiet of Sunday and with the health, safety and general welfare of the people of this State, certainly the citizens of Atlantic, Cape May and Ocean Counties should not be deprived of its beneficence. Nor is it apparent why, if there is some reasonable basis for making the statute applicable to counties bordering on the Atlantic Ocean, Monmouth County, also a summer resort county, should have been excluded merely because its population was 225,327, according to the 1950 census. There is nothing in the record to indicate how the economies of the three excluded counties will be harmed by the application of the statute to them, nor is there anything to indicate that the other 18 counties will suffer no injury to their economies because the described merchandise will be prohibited from sale on Sunday within their boundaries.
It is further contended that the Legislature might have made its classification because the three above-named counties have the largest percentage of unusable land of any counties in the State and the smallest number of persons engaged in manufacturing, but have the largest number employed in trade and services. The latter figure undoubtedly has reference to the summer vacation business. The relevancy of this figure to the classification in the statute is not immediately apparent. But as to summer vacation business, it might be pointed out that certain other counties of the State, such as Morris and Sussex, also enjoy large vacation business. Concerning the large number of persons employed in trade and services, the figures submitted by the Attorney General disclose that Atlantic County ranks first, then Ocean, and Cape May is third. Then comes Monmouth in fourth position, only three percentage points *539 below Cape May, and Essex is in fifth position, only 3.4% below Cape May. The difference is not substantial. As to classification by population, the counties of Burlington, Cumberland, Gloucester, Hunterdon, Morris, Salem, Somerset, Sussex and Warren all have populations under 225,000, according to the 1950 census, yet none of these is excluded from the provisions of the statute.
It is, therefore, obvious that neither the fact that the three counties border on the Atlantic Ocean, nor their population, nor the employment opportunities, provides a real or true basis for the classification. It seems plain that the classification was so designed in section 5 as to exclude only Atlantic, Cape May and Ocean Counties from the statute. No reason suggests itself as to why a sale on Sunday of clothing or furniture at a summer resort such as Lake Hopatcong should be illegal, while a sale of the same article on Sunday in Atlantic City should be lawful; nor why a sale of an item of clothing on one side of the dividing line between Ocean and Monmouth Counties on a Sunday should be legal, but on the other side illegal.
And the penalties imposed for such violations by sections 1 and 2 of the statute are fairly severe. Under section 2, four convictions may result in the premises of the vendor being declared a nuisance, which under N.J.S. 2A:130-3, 4 and N.J.S. 2A:85-7 would subject the vendor's goods to seizure and sale and the vendor to imprisonment up to three years.
In answers to interrogatories propounded by plaintiffs, the Attorney General stated that he was without information as to whether the sale on Sunday of the prohibited goods adversely affected the proper observance of the Sabbath. In these answers he also stated that he could not point to any legislative findings bearing upon the provisions of the statute, but said that "the terms of the act contained inherent findings of fact." The nature of these inherent findings was not specified, nor do they in fact appear in the statute.
*540 As the court said in Gundaker Central Motors v. Gassert, supra, the public policy of this State is against all worldly employment on Sunday, except works of necessity and charity, under N.J.S. 2A:171-1, and the means selected for accomplishing and maintaining that policy, are not for the courts to question as long as there is any reasonable basis for the enactment. However, no reasonable basis for the classification found in L. 1958, c. 138, is disclosed.
While it is true that the Legislature may by general act deal specifically with problems affecting particular counties, such a statute is constitutional only where there appears a reasonable basis for such classification. Sherwood v. Bergen-Hackensack, etc., Authority, 135 N.J.L. 304 (E. & A. 1947); Borough of Little Ferry v. Bergen County Sewer Authority, 9 N.J. 536 (1952), certiorari denied 344 U.S. 865, 73 S.Ct. 105, 97 L.Ed. 670 (1952).
I find the classification in section 5 to be illusory rather than substantial, and the exclusion of the counties of Atlantic, Cape May and Ocean from the effect of the statute, by virtue of section 5, to be arbitrary and to unlawfully discriminate between members of the class which the Legislature intended to be affected, i.e., the general public of New Jersey.
Since the classification contained in the statute cannot be sustained, section 5 must be declared unconstitutional and void.

II.

DOES THE INVALIDITY OF SECTION 5 RENDER THE ENTIRE ACT UNCONSTITUTIONAL OR IS THIS SECTION SEVERABLE, PERMITTING THE REMAINDER OF THE STATUTE TO REMAIN IN FORCE?
Section 6 of the statute, N.J.S. 2A:171-5.6, provides that the provisions of the act shall not be severable and, "if any phrase, clause, sentence or provision of this act is declared unconstitutional or the applicability thereof to any *541 person is held invalid, the remainder of this act and the act as a whole shall be unconstitutional." Section 7, N.J.S. 2A:171-5.7, provides that "if any phrase, clause, section or part of this act shall be determined to be invalid * * *, such part shall be excluded and the rest of the act shall be valid and effectual."
As heretofore noted, the present section 7 was section 5 in Assembly Bill No. 22. By Senate amendments, present section 6 was added and original section 5 renumbered as section 7. It is interesting to note that section 6 is the more specific of the two and it is the one in which the word "unconstitutional" appears, and it even contains a provision that if the statute be held invalid in its application "to any person" the whole of the act shall be unconstitutional. It is much more comprehensive than section 7.
It is well settled that, in the absence of an express declaration to the contrary contained in the act itself, the presumption is that the Legislature intended any given enactment to be effective in its entirety. Riccio v. Hoboken, 69 N.J.L. 649 (E. & A. 1903). See also, Johnson v. State, 59 N.J.L. 535 (E. & A. 1896); Iowa Life Ins. Co. v. East. Mut. Life Ins. Co., 64 N.J.L. 340 (E. & A. 1900).
The doctrine of separability must be applied with caution, as was said in Washington National Ins. Co. v. Board of Review, supra, and, unless the doctrine of separability is so applied, danger exists of judicial usurpation of the legislative power.
An excellent statement of the principle of separability is found in State v. Doto, 10 N.J. 318 (1952), where Justice Heher, in a concurring opinion, said as follows:
"The principle of separability is in aid of the intention of the lawgiver. The inquiry is whether the lawmaking body designed that the enactment should stand or fall as a unitary whole. It is not enough that the act be severable in fact; its severability in the event of partial invalidity must also have been within the legislative intention. It is a question of interpretation and of legislative intent whether the particular provision is so interwoven with the invalid clauses as that it cannot stand alone. A severability clause (there *542 was none here) `provides a rule of construction which may sometimes aid in determining that intent. But it is an aid merely; not an inexorable command.' Dorchy v. State of Kansas, 264 U.S. 286, 44 S.Ct. 323, 325, 68 L.Ed. 686 (1924). Absent such express declaration, it is to be presumed that the Legislature intended the act to be effective as an entirety. Riccio v. Hoboken, 69 N.J.L. 649, 662 (E. & A. 1903). The effect of the statutory declaration is to create in the place of the stated presumption `the opposite one of separability. That is to say, we begin, in the light of the declaration, with the presumption that the legislature intended the act to be divisible; and this presumption must be overcome by considerations which make evident the inseparability of its provisions or the clear probability that the invalid part being eliminated the legislature would not have been satisfied with what remains.' Williams v. Standard Oil Co. of Louisiana, 278 U.S. 235, 49 S.Ct. 115, 117, 73 L.Ed. 287 (1929). See, also, Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038 (1932); Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); Electric Bond & Share Co. v. Securities and Exchange Commission. 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105 (1938).
An act may fall in its entirety if the invalid elements constituted an inducement for the passage of the law, even though not the sole inducement. Even where a severability clause has reversed the presumption of an intent that unless the act operates as an entirety it shall be wholly ineffective, the void provision may `so affect the dominant aim of the whole statute as to carry it down with them.' Railroad Retirement Board v. Alton R. Co., 295 U.S. 330, 55 S.Ct. 758, 768, 79 L.Ed. 1468 (1935). Compare United States v. Reese, 92 U.S. 214, 23 L.Ed. 563 (1875); United States v. Steffens, 100 U.S. 82, 25 L.Ed. 550 (1879) (Trade-Mark Cases)."
If, by sustaining only a part of a statute, the purpose of the act is changed or altered, the entire act is invalid. Sutherland, Statutory Construction, supra, sec. 2407, p. 181.
When exceptions, exemptions or provisos in a statute are found to be invalid, the entire act may be void on the theory that by striking out the invalid exception the act has been widened in its scope and therefore cannot properly represent the legislative intent. Sutherland, Statutory Construction, supra, sec. 2412, p. 189; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936).
When we examine the history of this legislation in the light of these rules, the conclusion is inescapable that the *543 eliding of section 5 from the statute must result in the invalidity of the entire statute. The insertion by the Senate of section 5 into the Assembly bill, followed by the insertion of section 6, clearly indicates that the bill was not acceptable to the Senate as drawn.
While the Attorney General and certain other defendants argue that section 5 is severable from the remainder of the act, the defendants City of Atlantic City and the Greater Atlantic City Chamber of Commerce vehemently argue that it is not severable and that if it is held to be invalid then the whole statute must be declared unconstitutional. Plaintiffs, too, contend for non-severability. The Attorney General cites, as authority for his position, N.J.S. 1:1-10, providing that courts shall wherever possible sever unconstitutional provisions of a statute from valid ones in order to give effect to the statute as adopted.
The principle of severability of provisions of a statute is in aid of the intention of the lawgiver, and it is not enough that the act is severable in fact, but severability in the event of partial invalidity must also have been within the legislative intention. Angermeier v. Borough of Sea Girt, 27 N.J. 298, 311 (1958). A severability clause provides a rule of construction which may sometimes aid in determining that intent. But it is an aid merely; not an inexorable command. Dorchy v. State of Kansas, 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686 (1924).
That section 5 was not intended to be severable is clear. The title of the act refers to "certain counties." These words were added by Senate amendment. It is evident, therefore, that the Legislature did not intend that the statute should apply to all counties of the State. The excision of section 5 and the upholding of the balance of the statute would make it applicable to all counties, clearly contrary to the legislative intent as indicated by the title of the act. This would also be contrary to the provisions of Art. IV, Sec. VII, par. 4, of the 1947 Constitution, providing that every law shall embrace but one object, which *544 shall be expressed in its title. The object expressed in the title of this statute is to make it applicable only to certain counties and not to the whole State. The eliding of section 5 would make it applicable to all counties. Thus, the statute would not be in accordance with its title. This may not be done. Public Service Electric, etc., Co. v. City of Camden, 118 N.J.L. 245 (Sup. Ct. 1937); State v. Guida, 119 N.J.L. 464 (E. & A. 1938).
It is also argued that effect must be given to section 7 (the severability provision), rather than to section 6 (the non-severability provision), because section 7 being last in position must prevail. This is an artificial rule of construction to be applied only in an extreme situation. See Commercial Trust Co. of New Jersey v. Hudson County Bd. of Taxation, 86 N.J.L. 424 (Sup. Ct. 1914), where the court, discussing this rule, said at page 431:
"* * * There are cases holding that the later of two inconsistent provisions in a statute must prevail, likening the construction of statutes of the construction of wills rather than of deeds. The rule of these cases is, at best, artificial, and is based upon the false premise that the provision standing in the later position in the statute represents the later intent of the legislature. The whole statute, however, as has been well said, is approved and becomes law at the same instant, and not section by section or clause by clause; in fact, the last amendment is quite as likely to appear in the first section as in any other. The rule, if, indeed, it be a rule, is by no means inflexible, and, as the Court of Appeals of New York has said, is to be resorted to only in extremis. People ex rel. Mason v. McClave, 99 N.Y. 83, 89, 90, 1 N.E. 235. It is rejected when it leads to conflict with the legislative intent. McCormick v. Village of West Duluth, 47 Minn. 272, 50 N.W. 128; State ex rel. Patterson v. Bates, 96 Minn. 110, 104 N.W. 709; People ex rel. v. Mohr, 252 Ill. 160, 96 N.E. 893. * * *."
See also, McCran v. Borough of Ocean Grove, 96 N.J.L. 158 (E. & A. 1921), where the court said that "judicial excision of these features of the statute would in effect impose upon the people of the state a law which the legislature itself never would have passed," which would be improper *545 as constituting a judicial exercise of a legislative function. It should also be borne in mind that, while section 7 is last in position in the act, section 6 was the last provision inserted.
Since it is conceded by the defendants that the so-called seashore counties are largely dependent for their economic stability upon the summer vacation business, it is impossible to conclude that the Legislature would have passed this statute in its original form, as represented by Assembly Bill No. 22, which would have prohibited the sale on Sunday in those counties of the merchandise described in the statute. The Senate amendments are ample proof of the fact that the bill was not acceptable to that body in its original form. The Greater Atlantic City Chamber of Commerce, in its brief, states that 25% of the gross business of that city will be lost if its stores selling the proscribed merchandise were closed on Sunday, and that this will result in a drop in net profits of from 33-1/3 to 50%. It is claimed that 472 businesses will be adversely affected in Atlantic City alone.
The evidence impels the conclusion that section 5 was not intended by the Legislature to be severed from the balance of the statute, notwithstanding the provisions of section 7, and that the fact that the latter section is last in position does not require a finding that this is the section which the Legislature intended to be effective.
The determination that section 5 is unconstitutional and that it is not severable from the balance of the statute, thus rendering the entire act invalid, makes it unnecessary to discuss the other arguments asserted as to its unconstitutionality, such as the right of the Legislature to deal only with specific merchandise. See Gundaker Central Motors v. Gassert, supra; City of Elizabeth v. Windsor-Fifth Avenue, 31 N.J. Super. 187 (App. Div. 1954); N.J. Restaurant Ass'n v. Holderman, supra.

*546 III.

HAVE THE PLAINTIFFS STANDING TO ATTACK THE STATUTE?
The Attorney General urges that the complaint be dismissed because the plaintiffs have no standing to challenge the statute.
The complaint is not only in lieu of prerogative writ but for a declaratory judgment as to the validity of the statute. The rule as to the right of a litigant to secure a declaratory judgment has been greatly liberalized in recent years. N.J.S. 2A:16-50 et seq. National-Ben Franklin Fire Ins. Co. v. Camden Trust Co., 21 N.J. 16 (1956); Condenser Service, etc., Co. v. American, etc., Ins. Co., 45 N.J. Super. 31 (App. Div. 1957).
The Attorney General argues that a declaration that L. 1958, c. 138, is unconstitutional will not aid the plaintiffs because even without this statute  which is declared to be merely an additional remedy to the existing law (N.J.S. 2A:171-1)  the business carried on by the defendants is precluded by the last cited statute, since by its provisions the sale of all goods is unlawful on Sunday, except works of charity and necessity, and hence the statute under discussion does not deprive the plaintiffs of any rights which they previously had. This, however, overlooks the fact that L. 1958, c. 138, imposes strict penalties for the sale of certain merchandise, whereas N.J.S. 2A:171-1 has no penal provisions and has been declared not a penal statute but only an expression of public policy which is required to be implemented by municipal action. State v. Fair Lawn Service Center, Inc., 20 N.J. 468 (1956); Auto-Rite Supply Co. v. Mayor and Tp. Committeemen of Woodbridge Tp., supra. These cases hold that the power to prohibit Sunday sales is found not in N.J.S. 2A:171-1, but in the Home Rule Act (N.J.S. 40:48-2).
Thus, the activities of the plaintiffs prior to the passage of L. 1958, c. 138, were not subject to penal action unless *547 the various municipalities in which the plaintiffs did business adopted ordinances to that effect. Hertz Washmobile System v. Village of South Orange, 41 N.J. Super. 110, 115 (Law Div. 1956). Since these municipalities apparently have no such ordinances, or have not chosen to impose penalties, the property rights of the plaintiffs were adversely affected by chapter 138 because under its provisions the municipalities are no longer permitted to allow the sale on Sunday of the merchandise described, but must prohibit it.
Where a person's property right is affected, he has standing, for the protection of this right, to seek adjudication as to the validity of the statute so affecting him. City of Burlington v. Pennsylvania R.R. Co., 104 N.J.L. 649, 655 (E. & A. 1928); Burgess v. Drewen, 8 N.J. Misc. 179 (Cir. Ct. 1930). A person who alleges that a statute invades his personal or property rights, or that it is unlawfully discriminating as to him, may challenge the constitutionality of such statute. Columbus & G.R. Co. v. Miller, 283 U.S. 96, 51 S.Ct. 392, 75 L.Ed. 861 (1931).
The plaintiffs have shown that their personal and property rights will be adversely affected by this statute and, therefore, have standing to challenge its validity.
But apart from this rule, the plaintiffs, under the above cited cases, present a justiciable controversy in which the rights of the parties can be expeditiously and finally resolved by declaratory judgment, and this alone would suffice to warrant the granting of the relief sought.
A judgment may be presented in accordance with these conclusions.