Charles S. **MATHIS**, Jr., Petitioner,

v.

**STATE OF NORTH CAROLINA,**
Respondent.

No. C–255–G–66.

United States District Court
M. D. North Carolina,
Greensboro Division.

April 4, 1967.

W. Douglas Parrish, Winston-Salem, N. C., for petitioner.

Theodore C. Brown, Jr., Raleigh, N. C., for respondent.

## MEMORANDUM OPINION AND ORDER

GORDON, District Judge.

The petitioner, Charles S. Mathis, Jr., a prisoner of the State of North Carolina, has filed with this Court a petition for a writ of habeas corpus pursuant to the provisions of Title 28, U.S.C. § 2254, and accompanied the petition with an affidavit of poverty. The petition was filed *pro se* and an order has been entered permitting the petition to be filed without the prepayment of costs or fees or security therefor. The petitioner contends his constitutional rights were deprived in that:

(1) He was denied effective assistance of counsel.

(2) He was given an illegal and excessive sentence.

(3) G.S. § 14–107 is unconstitutional in that all its provisions are not uniformly applied throughout the state.

Petitioner was arrested on April 28, 1965, for issuing worthless checks and

placed in the Montgomery County Jail. A preliminary hearing was held May 4, 1965, and at that time six warrants were served on the petitioner charging him with obtaining property under false pretense in violation of G.S. § 14–100. Probable cause was found, and petitioner was bound over for trial in the Superior Court of Montgomery County. The cases came to trial at the July, 1965, Term of Superior Court of Montgomery County which convened on July 12, 1965, Judge Robert M. Gambill presiding. On that day the grand jury returned six indictments against the petitioner, two being forgery, under G.S. § 14–119, and four being false pretense under G.S. § 14–100. Also on January 12, 1965, the court appointed Charles Dorsett, an experienced member of the Montgomery County Bar, to represent the petitioner at his trial. The next day, July 13, 1966, petitioner, through his counsel, entered a plea of guilty to six counts of issuing worthless checks in violation of G.S. § 14–107 which the state, with the permission of the court, accepted. Petitioner was sentenced to two years on three of the counts, the sentences to run consecutively; the remaining three counts were consolidated, and petitioner was given a two year sentence suspended for five years.

Petitioner filed notice of appeal later that day which was withdrawn on the next day, July 14, 1965. Petitioner filed a petition for a writ of habeas corpus on September 29, 1965, which was denied by Judge Robert M. Gambill in an order dated October 4, 1965.

Petitioner next petitioned the United States District Court for the Western District of North Carolina seeking a writ of habeas corpus by a petition dated January 19, 1966. The petition was dismissed by Judge J. Braxton Craven on February 11, 1966, because the petitioner had not exhausted his state remedies.

So petitioner went back into the state court to exhaust them, filing a petition for a post-conviction hearing on March 5, 1966. Each of these three petitions contained substantially the same allegations as the petition presently under consideration. Garland S. Garriss was initially appointed at the July, 1966, Term of the Criminal Court of Montgomery County to represent the petitioner at his post-conviction hearing; however, due to illness, he was replaced as counsel by S. H. McCall, Jr., in an order dated September 15, 1966. The hearing was conducted before Judge Walter E. Johnston, Jr., on October 17, 1966, in Concord, North Carolina. A judgment denying the relief requested was entered by Judge Johnston the same day. Petitioner filed an application for a writ of certiorari to the North Carolina Supreme Court on November 4, 1966, which was denied November 29, 1966.

Having exhausted his state court remedies, a petition for a writ of habeas corpus was filed once more in the United States District Court for the Western District of North Carolina on December 17, 1966. On December 23, 1966, pursuant to the provisions of Title 28, U.S.C. § 2241(d), the proceedings were transferred to this Court since the petitioner had originally been tried and sentenced by a state court in this district.

A plenary hearing was held in Winston-Salem, North Carolina, on February 23, 1967. Petitioner was represented by W. Douglas Parrish, an able and experienced member of the Forsyth County Bar; and the following persons testified: Charles M. Johnson, Clerk of Court for Montgomery County; Charles H. Dorsett, counsel for petitioner at his trial; and petitioner.

At the hearing the contentions of both the petitioner and the state were fully developed. In essence the petitioner testified to the following:

He was placed in custody by the Montgomery County authorities at the Cleveland County Jail on April 28, 1965, on charges of issuing worthless checks. He repeatedly asked for counsel, but these requests were denied until his trial. On Monday, July 12, 1965, Judge Gambill inquired if he desired counsel and he was then examined as to his indigency. The next morning, July 13, 1965, about 45 minutes before

the trial commenced, he learned that Charles Dorsett had been appointed to represent him.

A hurried conference lasting about thirty minutes transpired before the trial. During this discussion, he states that his counsel told him that the state would probably accept a guilty plea to issuing worthless checks under G.S. 14–107, and that the maximum punishment was thirty days for each count. With this in mind, he plead guilty to six counts of issuing worthless checks. After the judge pronounced sentence and gave him two years on three of the counts, he, in his own words, "blowed a little hot." His protestations were cut short when the judge threatened him with contempt charges.

Further cross and direct examination brought out testimony from the defendant that:

He had read the statute in question, G.S. 14–107, a few months before while in Craggy Prison Camp near Asheville, and had been previously convicted under the same statute in Caldwell and McDowell Counties. He felt he was guilty of issuing worthless checks, not false pretense, and was willing to plead guilty to that charge if the state would accept such a plea. Neither the judge nor any court officials stated that thirty days was the maximum punishment for violation of G.S. 14–107 in Montgomery County. Moreover, the judge did not read the statute aloud to him in open court before passing sentence, even though the Clerk's minutes might reflect otherwise.[1]

He was so upset by the sentence that he had no opportunity to talk to his counsel after the sentence had been passed. He made known his desire to appeal that afternoon through the jailer, but withdrew the appeal the next day after the same jailer told him it would take the appeal twelve or fourteen months to go through. He further stated that his only complaint about the adequacy of his counsel was that he had been misinformed as to the maximum punishment possible. He said that additional time for preparation by his counsel would not have made any difference.

On the other side of the coin, Charles Dorsett testified to the following for the state:

He was appointed to represent petitioner on Monday, July 12, 1965, and held an initial conference with the petitioner that very day. At this first conference, he explained the false pretense charge and advised the petitioner that the facts sounded more like worthless checks than false pretense. He explained that false pretense was a felony and that issuing worthless checks was a misdemeanor. At this time petitioner contended that the maximum punishment for issuing worthless checks was thirty days. So he read and explained the statute to petitioner and emphasized that in Montgomery County the punishment could run up to two years. To this petitioner stated that he had no defense and wanted to plead guilty to issuing worthless checks if the charge could be reduced from false pretense. At the trial he vaguely recalled that petitioner raised a question about the penalty and the Judge read the statute to the petitioner before he was sentenced.

After a close examination of the record and the testimony at the plenary hearing, the Court now denies the relief

---

1. The Clerk's Minute Docket Sheet reflected that the Judge read and explained the Statute involved: "The Court explains and read the statute involved to the defendant in open court, and advises the defendant of the seriousness of the charges, after which the defendant stated that he entered such a plea through his counsel voluntarily to the six bills of indictment; that he entered such plea with no persuasion from his counsel." The Clerk of Court testified that under the usual procedure the court reporter recorded the Judge's remarks and gives the Clerk the typed judgment which is transcribed on the Clerk's minute docket and that it was possible that the court reporter might summarize what the court had said and done.

requested for the reasons hereinafter stated.

The petitioner first contends that his court-appointed counsel did not have sufficient time for pretrial preparation due to late appointment, resulting in the denial of his right to effective assistance of counsel. The exact time of the appointment is in dispute, but the more reasonable finding is that counsel was appointed on July 12, 1965, the day before petitioner's trial. This fact is corroborated both by Judge Gambill's order dated July 12, 1965, appointing Charles Dorsett as counsel, and the testimony of petitioner's counsel at the plenary hearing. Even considering petitioner's testimony as undenied, the fact that counsel is appointed the day of the trial does not on its face deny petitioner the effective assistance of counsel. As was stated in United States v. Ray, 4 Cir., 351 F.2d 554 (1965):

"There can be no predetermination of the length of time needed by court-appointed counsel to prepare for trial Since the requirements will vary greatly and what may be reasonable time in one case could be quite unreasonable in another." (351 F.2d at 555)

Moreover, petitioner flatly stated at the plenary hearing that only in misinforming petitioner as to the maximum punishment was counsel ineffective, and that additional time for preparation would not have substantially affected the caliber of his counsel's assistance. The petitioner would certainly not be bound by his own admission if this Court felt that there had been a showing of ineffective assistance of counsel; however, that is not the case. Here Mr. Dorsett, an experienced member of the Bar, provided the petitioner with more than adequate representation and the Court finds this contention to be without merit.

Even though the Court finds the petitioner had effective assistance of counsel, if his counsel had misinformed him as to the maximum punishment, this would raise a serious question concerning the voluntariness of his guilty plea.

If, in fact, the petitioner had plead guilty to issuing worthless checks in violation of G.S. § 14–107, relying on his counsel's assurances that the maximum punishment for each count was thirty days, and this misconception had existed through arraignment, it would render his guilty plea involuntary and therefore invalid. The difference between a possible six months sentence and a possible sentence of sixty years if convicted of all the charges in the indictments would cause a defendant to hesitate before pleading guilty. Even assuming the petitioner knew he would be tried for the misdemeanor of issuing worthless checks as opposed to the felonies of false pretense and forgery, the difference in possible punishment would vitiate his guilty plea.

At the plenary hearing, the petitioner testified he had been previously convicted under the same statute (G.S. § 14–107) and had read it only a few months prior. More conclusive is the fact, as his counsel testified, that this matter of punishment came up before the trial and was discussed at great length, with counsel reading the statute and explaining that the punishment in Montgomery County could run up to two years for each count. The shock of a seemingly harsh punishment and the resulting resentment will not retroactively invalidate a guilty plea, knowingly and voluntarily made. From the facts before the Court, it is more rational to find that petitioner plead guilty realizing the maximum punishment was not limited to thirty days for each count when the check is under $50.00 and was simply displeased when the sentence was greater than he had anticipated.

Secondly, petitioner challenges his sentence (two years on each of three counts) as illegal and excessive. The statute, G.S. § 14–107,[2] provides, except

2. § 14–107. *Worthless checks.*—It shall be unlawful for any person, firm or corporation, to draw, make, utter or issue and deliver to another, any check or draft

as to certain exempted counties, that a person violating any provision of that section would be guilty of a misdemeanor. The North Carolina Supreme Court has held that a two-year sentence for each violation of G.S. § 14–107 is not excessive, cruel, or unusual. State v. Levy, 220 N.C. 812, 18 S.E.2d 355 (1948).

A punishment which is within the limits authorized by the statute cannot be held to be illegal or excessive in the constitutional sense, offending neither Article I § 14 of the North Carolina Constitution[3] nor the Eighth Amendment of the United States Constitution[4] if that amendment were applicable to the states.[5]

■ Lastly, petitioner contends that G.S. § 14–107 is unconstitutional in that it is not uniformly applied throughout the state. Since the maximum punishment for issuing worthless checks under $50.00 is thirty days in eighty-six counties, the petitioner alleges that his conviction in one of the fourteen remaining non-exempt counties is unconstitutional since the punishment may be two years for each violation. This Court is of the opinion that such variation in punishment is unfortunate, but does not agree that the statute is unconstitutional as applied in this case.

Petitioner does not specify which constitution the statute violates nor how. From the record and arguments of counsel, it is assumed that petitioner contends that the statute violates Article I, § 7 of the North Carolina Constitution[6] and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution[7] because of the lack of uniformity in its application.

■ The Equal Protection Clause of the Fourteenth Amendment is not a guaranty that there must be an equality of operation or application of state legislation upon all the citizens of a particular state. State laws need not affect every man in a state exactly alike to be consistent with this protection. A state

---

on any bank or depository, for the payment of money or its equivalent, knowing at the time of the making, drawing, uttering, issuing and delivering such check or draft as aforesaid, that the maker or drawer thereof has not sufficient funds on deposit in or credit with such bank or depository with which to pay the same upon presentation.

It shall be unlawful for any person, firm or corporation to solicit or to aid and abet any other person, firm or corporation to draw, make, utter or issue and deliver to any person, firm or corporation, any check or draft on any bank or depository for the payment of money or its equivalent, being informed, knowing or having reasonable grounds for believing at the time of the soliciting or the aiding and abetting that the maker or the drawer of the check or draft has not sufficient funds on deposit in, or credit with, such bank or depository with which to pay the same upon presentation.

Any person, firm or corporation violating any provision of this section shall be guilty of a misdemeanor. (If the amount due on such check is not over fifty dollars, the punishment shall not exceed a fine of fifty dollars or imprisonment for thirty days.) The word "credit" as used herein shall be construed to mean an arrangement or

understanding with the bank or depository for the payment of any such check or draft. The part of this section in brackets shall only apply to the counties of Alamance. * * * (85 other counties are listed here, but Montgomery County is not one of them)

3. State v. Welch, 232 N.C. 77, 59 S.E.2d 199 (1950).

4. Smith v. United States, 10 Cir., 273 F.2d 462 (1959), cert. den. 363 U.S. 846, 80 S.Ct. 1619, 4 L.Ed.2d 1729.

5. Creighton v. State of North Carolina, 202 F.Supp. 765 (D.C.N.C.1962).

6. Article I, § 7 of the North Carolina Constitution—
§ 7. *Exclusive emoluments, etc.*—No person or set of persons are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services.

7. U. S. Constitution. Amendment XIV. § 1. * * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

legislature can determine if a statute should apply to the whole state or only a part. The federal constitution requires only that the statute be equally applied in the territory where it operates. As Justice Burton stated in Salsburg v. State of Maryland, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954):

> "The Equal Protection Clause relates to equality between persons as such rather than between areas." (346 U.S. at 551, 74 S.Ct. 280, 283, 98 L.Ed. at 288)

Petitioner further relies on the rule that a statute which varies punishment for an offense according to the county or district in which it is committed, is an unjust discrimination and a deprivation of the equal protection of the laws.[8] To support application of this rule in North Carolina, petitioner cites State v. Fowler, 193 N.C. 290, 136 S.E. 709 (1927). There the legislature passed a statute applicable to only six counties. In these six counties the punishment for the first offense of manufacturing liquor would be only a fine in contradiction to the general law which made such an offense punishable by both fine and imprisonment throughout the rest of the state. The North Carolina Supreme Court then held the statute unconstitutional as violative of both the Equal Protection Clause of the Fourteenth Amendment and Article I, § 7 of the North Carolina Constitution, since it conferred a privilege not enjoyed by the other residents of the state who were subject to imprisonment for the first offense.

It is essential to note that in the Fowler case and all the cases cited by the petitioner upholding this general rule, the statute or exemption was found unconstitutional because it deviated from the general law. The term "general law" pertains to the subject matter of the law, not its application throughout the state. Its provisions must embrace the whole of a subject and the subject matter must be of common interest to the whole state.[9]

Petitioner was tried and convicted under the general law of § 14–107 and not the exemption, thereby he has no grounds to question the lack of uniformity in the application of the statute caused by the exemption. The original statute contained only the general law; the later exemptions to the statute might be subject to question under the rationale of Fowler, but petitioner cannot attack his conviction on this ground, because he was convicted under the general law which is manifestly constitutional.

The constitutionality of the exemption to G.S. § 14–107 is not properly before this Court. Nevertheless, it is noted in passing, that the Fowler decision has been sharply criticized because of its holding that the phrase "no person or set of persons" in Article 1, Section 7, is applicable to political subdivisions of the state (i. e., counties). In reality, counties, as political subdivisions of the state, do not seem to be within the purview of Article 1, § 7, considering the vast number of local legislative acts, including ABC laws in contradiction to the general prohibition law, which are passed each session by the General Assembly.[10]

Even though the Equal Protection Clause of the Fourteenth Amendment and Article 1, § 7 of the North Carolina Constitution condemn arbitrary deviation from the general law, petitioner's contention that he was convicted under an unconstitutional statute is found to be without merit, because he was tried and sentenced under the general law of G.S. § 14–107, which is not susceptible to challenge on that ground.

The Court wishes to acknowlege its appreciation to W. Douglas Parrish for his able assistance in this matter.

8. 59 A.L.R. 433.

9. 50 Am.Jur. 76, Statutes § 55.
   Sarner v. Union Township, 55 N.J.Super. 523, 151 A.2d 208 (1959).

10. 33 N.C.L. 109.

## ORDER

It is ordered that the petition for the writ of habeas corpus filed by the petitioner, Charles S. Mathis, Jr., be, and the same is hereby denied and dismissed.