Arthur G. Klein, J.
Plaintiffs, a retail bookseller in Manhattan, and its president, pray for a declaratory judgment adjudging invalid sections 484-h and 484-i of the Penal Law, added by chapters 327 and 372 of the Laws of 1965.
Defendants are the Police Commissioner of the City of New York, the District Attorney of New York County, and one Rev. Morton A. Hill, who, it is alleged, earlier caused a prosecution to be initiated against the plaintiffs, which has since been dismissed (14 N Y 2d 409 [1964]) and who now threatens, upon information and belief, to initiate further criminal proceedings against these plaintiffs.
The sections make criminal the sale to persons under 17 and 18 years of age, respectively, of sexually offensive literature.
Bottomed on their complaint, which asserts it is unconstitutional to invade plaintiffs’ right to sell books on the basis of the age of the purchaser, and with no further supporting affidavit, plaintiffs move for a temporary injunction restraining each of the defendants from enforcing the statute pending the determination of the litigation.
Plaintiffs seek this temporary relief because, as they assert, they believe the statute to be unconstitutional as in violation of the Fourteenth Amendment; and, despite the statute, they intend to continue the sale of a book entitled ‘ ‘ Memoirs of a Woman of Pleasure ”, which is asserted to be within the proscription of the statute.
Defendants cross-move for dismissal of the complaint upon the ground that the facts alleged in the complaint do not justify the entry of a declaratory judgment.
Reverend Hill is engaged in a community project known as “ Operation Yorkville ” and on occasion he has stressed the evils of the sale of salacious material to minors. He asserts that he has not instituted any prosecution, nor does he intend to in the future. The earlier prosecution was initiated by Mary Keegan on behalf of her daughter, Kathleen Keegan, as appears by the Record on Appeal in People v. Bookcase, Inc. (14 N Y 2d 409, supra).
In his answering affidavit defendant Hill states that, in the past, he has explained to a great many people the evils which result from the sale of such material to youngsters, and that he has informed people that one avenue of combatting those *353 evils is by way of prosecution. As a result of this, evidently, the prosecution in the Keegan case was instituted.
Reverend Hill asserts, quite properly, that the plaintiffs, in seeking to enjoin him, are asking this court to suppress, in advance, his freedom of speech, a right guaranteed to him by the First Amendment to the Constitution of the United States. This the court will not do.
That branch of the motion seeking a temporary injunction against the defendant Hill is accordingly denied; and the cross motion to dismiss the complaint against him is granted, for in no event may a complaint against an individual be predicated, as is this complaint, upon an asserted violation of the Fourteenth Amendment. (Civil Rights Cases, 109 U. S. 3,11 [1883].)
That branch of the motion seeking to restrain the Police Commissioner and the District Attorney stands on different ground.
Alleging the unconstitutionality of the statute, plaintiffs assert they fear prosecution by the lawful authorities. This fear is obviously justified, for the plaintiffs continue to violate the statute, which is, prima facie, valid and constitutional. Ergo, a temporary injunction is sought restraining such prosecution pending the determination of this litigation. Such relief is identical with the ultimate relief sought in the action, i.e., a permanent injunction.
To warrant the granting of a temporary injunction in these circumstances, the showing of the right to ultimate permanent relief must be clear. (Weiss v. Herlihy, 23 App. Div. 608, 612 [1st Dept., 1897]; Barricini, Inc. v. Barricini Shoes, 1 A D 2d 905 [2d Dept., 1956]; Bobrose Developments v. Jacobson, 251 App. Div. 825 [2d Dept., 1937]; 10 Carmody-Wait, New York Practice, Injunctions, § 21, p. 548; cf. Yome v. Gorman, 242 N. Y. 395, 401-402 [1926; per Cardozo, J.].)
Obviously, the unconstitutionality of the statute is hardly clear. On the contrary, a statute is entitled to a presumption of regularity and validity.
The statute in question is all the more entitled to such a presumption, in the face of plaintiffs’ challenge on the ground of age discrimination, where it was enacted following the decisions of the Court of Appeals in People v. Bookcase (supra) and People v. Kahan (15 N Y 2d 311-312 [1965]) holding that section 484-h was defectively drafted and that ‘1 a constitutionally valid statute defining obscenity in its impact on the young * * * might emerge under careful draftsmanship.
‘ ‘ Underlying the First Amendment is the premise that government cannot be trusted to regulate thought or opinion and that the people may and, in fact, must be left to reject for them-
*354 selves false or harmful doctrine whether it involves political, moral or other precepts. (See Thomas v. Collins., 323 U. S. 516, 545, per Jackson, J., concurring; Whitney v. California, 274 U. S. 357, 375-376, per Brandeis, J., concurring.) But the same reliance need not be and has never, either in theory or practice, been placed on the judgment of children, and the Constitution does not secure to them the same, almost absolute, right assured to adults to judge and determine for themselves what they may read and what they should reject.” (Fuld, J,, concurring in People v. Italian, supra, p. 312.)
The health of children has always been a matter of concern to the Legislature. (Cf. Child Labor Law, Labor Law, art, 4, §§ 130-140; art. 5, tit. 2, §§ 170-177; sale of liquor to children, Alcoholic Beverage Control Law, § 65; Penal Law, § 484, subd, 3; sale of cigarettes to minors, Penal Law, § 484, subd, 5.) This court can see no distinction between their physical health, validly protected by such statutes; and their mental health and well-being sought to be protected by the law here attacked, or, for example, by the Compulsory Education Law (Education Law, art. 65, § 3205 et seq.).
That branch of the motion seeking a temporary injunction against the public officers is accordingly likewise denied.
The motion by the public officers to dismiss the complaint is denied. The plaintiffs are obviously entitled to a forum to determine their claim of unconstitutionality, without risking prosecution. (De Veau v. Braisted, 5 A D 2d 603, 607 [2d Dept., 1958], affd. 5 N Y 2d 236 [1959], affd. 363 U. S. 144 [1960]; Dombrowski v. Pfister, 380 U. S. 479 [1965]; Bunis v. Conway, 17 A D 2d 207 [4th Dept., 1962]; Borchard, Declaratory Judgments [2d ed., 1941], p. 66; cf. Hofstadter and Levittan, 37 N. Y. State Bar J. No. 38, pp. 116, 123 [1965],)
Said the Appellate Division for the Fourth Department in Bunis v. Conway (supra, p. 211): “ The use of declaratory judgment procedure is the most effective method of overcoming any attempt by local government officials to impose extralegal censorship. A bookseller, faced with a threat of prosecution if he sells a book condemned by the authorities, may escape from the dilemma by procuring, in an action for a declaratory judgment, a judicial determination as to the legality of the sale of the book, without first selling the book and incurring the risk of prosecution ”.
In order to secure an adjudication as to the validity of this law, it should not be necessary to violate it; certainly this .court will not condone a violation such as is stated to be plaintiffs’ intention.
*355 As well put in the answering affidavit submitted on behalf of the codefendant Hill, “ Freedom is not an absolute, and * * * neither this court nor society can be for freedom against the law. If the freedom sought is not freedom under law, the result will be anarchy
In these circumstances, declaratory judgment is an effective remedy. The cross motion on behalf of the public officers is denied; and the plaintiffs may move for expeditious trial.