Joseph A. Suozzi, J.
In this article 78 proceeding the petitioner, a 16-year-old youth to whom a junior operator’s license has been duly issued, seeks the removal from said license of the restriction which prohibits him from operating a motor vehicle within Nassau County except “for the purpose of driving to and from a state approved cooperative work-study educational program.”
*173 In every other county of the State except those within the City of New York the statute permits the holder of a junior operator’s license to operate a motor vehicle, unaccompanied, during the daytime hours, and during the hours of 8:00 p.m. and 5:00 a.m. if accompanied by a parent, guardian or one in the position of loco parentis. Further, there is no restriction at all on the hours of driving for the purpose of traveling to or from school. (While the statute specifies the nighttime hours as being between 8:00 p.m. and 5:00 a.m., the license itself refers to them as “the hours of darkness ”.) The statute also prohibits the holder of a junior operator’s license from driving within the City of New York, and makes no exceptions there as to work-study programs.
At the outset it must be noted that an article 78 proceeding against the Commissioner of Motor Vehicles to remove the license restriction is not the appropriate remedy. The restriction has been imposed by the statute (Vehicle and Traffic Law, § 501, subd. 1, par. b), which is self-operative, and not by the Commissioner’s regulations, which are merely repetitive of the statute. Furthermore, the enforcement of the statute is not vested in the Commissioner, since a violation is expressly delineated in the statute as a penal infraction (Vehicle and Traffic Law, § 501, suhd. 10). It is, therefore, the constitutionality of the statute itself which is at issue. This issue is most appropriately determined by a declaratory judgment action (see Fenster v. Leary, 53 Misc 2d 774, revd. 20 N Y 2d 309 ; Bunis v. Conway, 17 A D 2d 207, 211, app. dsmd. 12 N Y 2d 882, 13 N Y 2d 1143 ; Bookcase, Inc., v. Broderick, 49 Misc 2d 351).
Since the court is empowered to treat this article 78 proceeding as an action for declaratory judgment for this purpose (Matter of Lakeland Water Dist. v. Onondaga County Water Auth., 24 N Y 2d 400, 408, 409), and the Attorney-General has appeared in support of its constitutionality (cf. Executive Law, § 71), the court will deem this proceeding such an action. When the court has obtained jurisdiction over the parties, a judicial proceeding shall not be dismissed solely because it is not brought in the proper form (CPLE 103). “ The true question is whether a cause for complaint has been stated; the form of the action or proceeding can he molded by the court ”. (Bloom v. Mayor of City of New York, 35 A D 2d 92, 97.)
The respondent moved to dismiss the petition on grounds which will be discussed hereinafter, and has submitted matters on the motion which relate to the merits of the controversy. Under these circumstances the court is not required to afford *174 the respondent an opportunity to file an answer pursuant to CPLR 7804 (subd. [f]) in the event a dismissal is not warranted, and the matter may be considered and determined on the merits at this stage of the proceeding (cf. Matter of Spanierman, 58 N. Y. S. 2d 322, affd. 270 App. Div. 885 ; Matter of Kiernan v. Mirante, 53 Misc 2d 173).
The petitioner pursues his attack against the restrictive provisions in the statute as they relate to Nassau County on two separate grounds. The first of these is that the statute violates the provisions of the “home rule” section of the New York State Constitution (art. IX, § 2, subd. [b], par. [2]) in that it is a special law adopted by the Legislature without a request of the Board of Supervisors of Nassau County or a certificate of necessity from the Governor. This contention is without merits in this court’s opinion, and the petitioner’s reliance thereon is misplaced.
Admittedly the statute which imposes this restriction was adopted without a request of the Board of Supervisors of Nassau County or a certificate of necessity from the Governor. However, the ‘ ‘ home rule ’ ’ provisions relate only to ‘ ‘ the property, affairs or government of any [local government].” (Whalen v. Wagner, 2 Misc 2d 89, 91, affd. 3 A D 2d 936, affd. 4 N Y 2d 575.) Judge Crane, speaking for the Court of Appeals in Adler v. Deegan (251 N. Y. 467, 473) pointed out that those words have a “special, limited meaning”. In a concurring opinion in the same case, Judge Potjkd pointed out (p. 483) that in matters which are of concern to the State, .such as ‘ ‘ the life, health and safety ’ ’ of inhabitants of localities in the State, the Legislature is not limited by the home rule provisions of the Constitution.
Since the provisions of section 1604 of the Vehicle and Traffic Law expressly exclude local authorities from any jurisdiction over the licensing of an operator of a motor vehicle (with exceptions not pertinent here), it is clear that such matters are the exclusive concern of the State. The statute, notwithstanding its limited territorial application, cannot be construed as a special law for Nassau County which requires a request from 'the County’s Board of Supervisors or the Governor’s certificate of necessity.
The attack is further pressed on the second claim that the statute is unconstitutional because it violates the equal protection provisions of the New York State Constitution (art. I, § 11) and the United States Constitution (14th Arndt.). The gist of this attack is that the conditions in Nassau County relating to traffic safety are not .substantially different from the conditions *175 which exist in other counties of the State where 16-year-old residents with junior licenses are permitted to drive motor vehicles, and that the denial of this privilege to the petitioner, who holds a junior license and is a resident of Nassau County, constitutes a denial of the constitutionally guaranteed “ equal protection of the law.” The essence of equal protection is that all persons similarly .situated should be treated alike (Barbier v. Connolly, 113 U. S. 27, 32).
Since the places to which a junior operator is most likely to transport himself, such as school, stores, places of work and recreation, and the like, during daylight hours, are most likely to be in the vicinity of his home, it is claimed that this legislation frustrates the purpose of a junior license primarily with respect to Nassau-based operators. Therefore, the petitioner’s argument is not materially affected by the observation that junior operators who reside outside this county also may not drive within Nassau County.
In seeking the dismissal of the petition herein, and in support of the statute’s constitutionality, the respondent contends that the petitioner has not demonstrated that Nassau County is similar to other areas in the State which are not similarly restricted. Additionally, it is argued that the prevailing judicial doctrine, as interpreted by the United States Supreme Court and by our own courts, permits the Legislature to establish a classification which is limited as to its territorial effect, without violating the equal protection guarantees, providing there is a reasonable basis for the distinction.
The ‘ ‘ reasonable basis ’ ’ underlying this statute is presumably established by the exhibits which respondent has submitted, to wit, (1) a letter dated March 3, 1960, from New York State Senator Edward Speno, the Nassau County legislator who sponsored the statute, and (2) a memorandum from the Department of Motor Vehicles. The considerations and the facts which constitute the reasonable basis relied upon by the respondent are set forth in the Senator’s letter as follows: *176 The pertinent part of the Department of Motor Vehicles memorandum (N. Y. Legis. Annual, 1960, p. 348) contains the following:
*175 There are in existence in Nassau County approximately 15% of all of the junior operator licenses issued in the State of New York, as shown by the statistics set forth in the attached schedule. In Nassau County these young people represent approximately 2% of the driving public and our present figures indicate that they are involved in approximately 6% of the accidents. This disproportionate ratio would seem to justify the restriction of the licenses.
The congestion on the highways of Nassau County by reason of the large population of over 1,250,000, the proximity of the county to New York City where no junior operator licenses are issued, support the justification for expanding the restriction to include Nassau County.
*176 The numbers of motorists on Nassau County roads today is staggering. The county in the past ten years has experienced a phenomenal growth to the extent that the population has increased from about half a million in 1948 to about a million and a quarter in 1958. The purpose and reason behind the original enactment was to permit those who had reached 16 years of age, to operate a motor vehicle on the farms in rural areas and to drive to and from school where great distances were involved and no other means of transportation was available. 'Such a situation does not now prevail in Nassau County. The area is no longer rural, school buses are supplied to transport children to and from school and the immediate need of transportation by automobile is not present.
Many junior operators have abused the privilege originally granted to them. We do not mean to classify all junior operators as violators, but we do feel that these abuses have caused hardship in many cases.
In Nassau County 10,592 licenses were issued to junior operators of 16 years of age during the first ten months of 1958 (in the state for the year 1957, 191, 188). It should also be pointed out at this time, that in the City of New York, which does not license junior operators, 25% of all accidents in the five boroughs involved those of 25 years or under. This seems to point to the fact that in this younger age group, .there is a disregard for safety and lack of maturity in realizing the seriousness of operating a motor vehicle and their responsibility in connection with it.
The only reported case dealing directly with the validity of this statute is that of People v. Joy (50 Misc 2d 690) wherein Nassau County District Court Judge Dokovan held that the statute was unconstitutional and unreasonable. However, its holding is not controlling inasmuch as it arises from a lower court in the judicial hierarchy. Furthermore, as the respondent has pointed out, it does not appear that the factual considerations upon which the Legislature was presumed to have relied were considered by the District Court.
One of the most recent interpretations by the New York Court of Appeals of the prevailing judicial doctrine as to territorial discrimination in terms of equal protection was stated as follows in Matter of Hogan v. Rosenberg, People v. Baldwin (24 N Y 2d 207, 216): “ The Supreme Court has recognized that territorial discrimination as between different States and even as between different parts of the same State is not of itself violative of the equal protection clause, even if the State has no reasonable basis for making such a distinction.”; Therein, in upholding the constitutionality of a statute which limited jury trial in New York City to crimes punishable by more than one year in prison, the court, relying on Salsburg v. Maryland (346 U. S. 545), rejected the equal protection argument on the basis *177 of the above interpretation. In reaching this conclusion, the court also determined that the statute had a reasonable basis for making the distinction. Obviously, the majority of the court did not share the doubts expressed by Associate Judge Burke in his dissent therein as to the “viability of territorial discrimination in terms of the equal protection clause ’ ’ (Matter of Hogan v. Rosenberg, supra, p. 231).
Other determinations in favor of constitutionality predicated on findings of a “ reasonable basis ” in actions which predated Matter of Hogan v. Rosenberg (supra) involving enforcement of criminal standards which differed within a State may be found in McGowan v. Maryland (366 U. S. 420 [1961]) ; Mathis v. North Carolina (266 F. Supp. 841); People ex rel. Kipnis v. McCann (199 App. Div. 30, affd. 234 N. Y. 502) ; State v. Fowler (193 N. C. 290) ; Rippey v. Texas (193 U. S. 504) ; Ohio ex rel. Lloyd v. Dollison (194 U. S. 445).
According to the standards discernible in these precedents, clearly the “ disproportionate ratio ” of accidents in Nassau County involving junior operators, as set forth in Senator Speno’s letter to the Governor, has the appearance of being as reasonable a basis for the statute herein as were the bases in the aforesaid precedents. With such a “reasonable basis” buttressing the presumption of constitutionality which accompanies every legislative enactment (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 540-541 ; Borden’s Co. v. Baldwin, 293 U. S. 194, 209-210), questions as to the wisdom, need or appropriateness of the challenged statute would appear to be beyond the inquiry of this court according to the rules applicable at the time of Matter of Hogan v. Rosenberg (supra) (Olsen v. Nebraska, 313 U. S. 236 ; Matter of Spielvogel v. Ford, 1 N Y 2d 558 [1956]).
However, the reversal on June 22, 1970, by the United States Supreme Court in Baldwin v. New York (399 U. S. 66) of the New York Court of Appeals’ determination in Matter of Hogan v. Rosenberg (supra) has so severely undercut the interpretation of the judicial doctrine of territorial discrimination in terms of equal protection theretofore applicable, and reinforced Associate Judge Burke’s doubts, that this court does not now consider itself restricted from further consideration of the constitutional issue raised here, even if the statute has passed the traditional test of having a reasonable basis.
In pursuing this judicial scrutiny of the statute herein, this court is not unmindful that the United States Supreme Court did not reach or determine the equal protection argument in *178 Baldwin v. New York (supra). However, the majority opinion’s referral (pp. 71-72) in a footnote (n. 17) to Horowitz and Neitring, Equal Protection Aspects of Inequalities in Public Education and Public Assistance Programs from Place to Place Within a State (15 U. C. L. A. L. Rev. 787, 787-804 [1968]), lends the court’s approval to the conclusion reached in that article that “It is no longer a sound generalization that equal protection requirements are satisfied if there is a rational basis for the territorial difference ” (p. 804).
After reviewing some relevant cases involving the administration of justice, enforcement of various types of criminal standards, regulation of economic activities, demarcation of boundaries of local governmental entities, closing of public schools and the apportionment of the State Legislature, these authors observed and the court agrees that this question is much more complex than 1‘ merely asking whether there is a ‘ rational basis ’ for the classification.” Á “ rational basis ” for the classification does not now necessarily satisfy the “ equal protection ” requirements according to determinations made by the United States Supreme Court in cases where there was a rational basis (see Griffins. Illinois, 351 U. S. 12 [1956] ; Douglas v. California, 372 U. S. 353 [1963] ; Harper v. Virginia Bd. of Elections, 383 U. S. 663 [1966] ; Carrington v. Rash, 380 U. S. 89 [1965] ; Reitman v. Mulkey, 387 U. S. 369 [1967]).
Implicit in the challenged statute is the conclusion that a 16-year-old operator is a greater traffic hazard in Nassau and New York City than elsewhere in the State. Instead of directly enjoining the issuance of any junior licenses to Nassau residents, the statute permits the State to issue these licenses and at the same time in effect to tell their holders that they cannot use them. This rather indirect approach to remove junior operators from the Nassau highways triggers some initial doubts, as the Judge in People v. Joy (supra) observed, as to the reasonableness of the statute, and at the same time inferentially reflects the Legislature’s own misgivings and uncertainties about a direct denial of the driving privilege within Nassau to its junior operators.
These doubts as to the statute’s reasonableness and the inference as to the Legislature’s own uncertainties are not diminished by the observation that the legislation is also designed to preserve for the Nassau junior operator the privilege of driving elsewhere in the State if he can find someone to take him outside of his county of residence or happens to find himself there. For this feature of the statute itself reflects another unreason *179 able aspect, since no practical difference between the skill needed to handle a vehicle safely in other areas of the State characterized with traffic congestion and that required on the Nassau highways is readily apparent.
Admittedly Nassau County has a larger population than others in the State. However, even in counties of lesser population there are suburban and urban centers of population and business sections which are characterized with traffic congestion commensurate with the congestion in Nassau. The western portion of Suffolk County, the cities and incorporated areas within the neighboring County of Westchester and the larger New York Cities of Syracuse, Buffalo, Albany and Rochester are just some of the areas which readily come to mind. Thus a Nassau junior operator may drive in the congested areas of those up-State cities; on the Suffolk County portion of all the major thoroughfares that criss-cross Long Island, such as the Long Island Expressway, Southern and Northern State Parkways, Sunrise Highway and Routes 25, 25A and 110; and on the many congested highways that extend into Westchester County, but may not drive from home to school or even around the block.
Unfortunately, statistics similar to those cited as to Nassau County are not available as to other areas of the State. Therefore, it is not now possible to make a comparable analysis between Nassau and other areas of the State as to the ratio of accidents involving junior operators to the total number of junior licenses issued. Without a showing that this ratio was disproportionately higher in Nassau than elsewhere in the State, the restriction against Nassau junior operators would, in this court’s view, be as unfair as is the assumption that the junior operators in Nassau were responsible for all or a substantial portion of the accidents in which they were involved.
Data published by the Department of Motor Vehicles for the years 1962, 1965, 1966, 1967 and 1968 (Petitioner’s Exhs. A-l, A-2, B-l, C and D) set forth statistics as to the accident experience in Nassau County and in other areas of the State in terms of accidents per motor vehicles registered. A comparative analysis of these statistics reveals such a similarity in accident experience between Nassau and these other areas of the State as to require that Nassau should not be treated differently from these other areas with respect to the use of junior operator’s licenses.
The extension to Nassau-based operators, by virtue of the challenged statute, of the restriction which formerly was applicable only to New York City on the basis of any similarity *180 between the accident experience of these two areas prior to the enactment of the statute cannot now be justified on this ground. The substantial disparity in the ratio of accidents to the number of registered vehicles between Nassau and New York City disclosed by the same published data referred to above establishes that whatever resemblance may have existed in this regard no longer prevails.
The reliance by the Department of Motor Vehicles on the high percentage (25%) of accidents involving drivers 25 years of age or under in New York City, where junior operators cannot drive, to explain its support of the ban against 16-year-old drivers in Nassau is an example of the strained reasoning which has been used to sustain this statute. Such statistics would more logically and -sensibly support restrictions which might be imposed against all drivers in the under-25-age group rather than against junior operators in Nassau only.
The proximity of Nassau County to New York City is a weak crutch to support this legislation, since the similar proximity of Westchester County to New York City and its equally crowded highways is completely ignored.
Another justification advanced by the respondent for this legislation is the claimed difference in the situation as to the availability of other transportation facilities in Nassau County and elsewhere in the State. This is indeed an insubstantial argument, because any one familiar with the transportation facilities in Nassau County cannot possibly believe that there is a greater need for junior operator’s licenses elsewhere in the State based on a lack of other transportation than there is in Nassau.
Another unreasonable and anomalous situation created by the statute is that a 16-year-old person with a learner’s permit may drive in Nassau County if his parent is with him and he is enrolled in a driver’s education course. However, once that same person has passed a presumably rigid driving test and obtained his junior license, he may no longer drive in Nassau even if his parent is in the car.
A striking example of the unequal application of this statute arises from the exemption from its restriction of holders of junior licenses who attend a State-approved co-operative work-study program. This court is also impelled to ask, as did the Judge in People v. Joy (supra, p. 693): “What difference can it make to the motorist who encounters a 17-year-old on the highway, whether he was going to the store for his mother, is driving to school, going to the beach, or driving to a place where he is enrolled in a work-study program. His destination is *181 unimportant. The real consideration for regulatory purposes is: Does he have the competence and the maturity and skill to be entrusted with a motor vehicle upon the highways?” If' there is a rational basis for this distinction within Nassau County between those junior operators who attend a State-approved co-operative work-study program and all other junior operators, it completely eludes this court.
There is another dimension to this constitutional issue in terms of equal protection which must be taken into account in determining the issue raised. It arises from the existence since 1966 of a District Court determination — of which there has been no appellate review — that this statute is unconstitutional. As has been pointed out earlier, this holding is not binding on any other court or Judge. Therefore, the different treatment which may be accorded persons charged with a violation of this section by the Judge who decided that case and his colleagues who agree with him, and by the remaining Judges who are not disposed to follow that determination, suggests an obvious demonstration of unequal protection of the law created by the enforcement of this statute.
In this court’s view the considerations upon which this statute was predicated are now equally pertinent to other areas of the State and to drivers other than those who qualify for junior licenses in Nassau. Other considerations were not then and are not now materially relevant. The evil which this legislation was designed to remedy is manifesting itself elsewhere in the State and is not isolated within Nassau County. The unreasonable and anomalous situations which arise from enforcément of this statute reflect its inherent unreasonableness. Therefore, the continued denial to Nassau-based junior operators of the privilege to drive within their home communities and their subjection to criminal prosecution for doing exactly the same thing that is legally sanctioned in other comparable areas of the State — and as close as just over the county line in western Suffolk — offends the equal protection concepts embodied in the Constitutions of the United States and New York State.
Whether or not youths between the ages of 16 and 18 ought to be permitted to drive at all, or upon compliance with certain conditions, is for the Legislature and not for this court to determine. This court expresses no view with respect thereto. All that this court is required to do and can do is to insure that the existing laws are in harmony with the equal protection guarantees provided by the State and Federal Constitutions. It is undeniable that these guarantees are equally applicable to the *182 young as well as the old, and to privileges as well as rights. As was so well stated by Justice Jackson in Railway Express v. New York (336 U. S. 106, 113): “ Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation.” As the court sees its duty, it can best be discharged with respect to this legislation by a declaration that the restriction of the privilege to operate a motor vehicle within Nassau County which primarily affects Nassau County residents who hold a junior operator’s license violates the “ equal protection of the law ” principle of the Federal and State Constitutions and is, therefore, unconstitutional.
At a time when we are in the midst of an equalitarian revolution it does not promote the cause of law and order, upon which the preservation of our society depends, or encourage respect for the law and for authority if the holders of junior licenses who live in Nassau County, and who would otherwise be privileged to drive automobiles in their home communities, continue to be singled out for such discriminatory and unequal treatment.
In reaching this determination at this time this court is not unaware that the petitioner is about to reach his 17th birthday and that as to him this determination is therefore academic and moot and on its face represents a Pyrrhic victory. In addressing itself to this point, the court must note that even if the petitioner were younger and not approaching the time when he no longer would qualify for a junior operator’s license, the appeal from this determination which is most likely to be taken would have deprived him — as it will others who are similarly affected — of the privilege to drive until the issue has been finally determined by the appellate courts or the issue rendered moot by legislative action. In any event, the petitioner by presenting his grievance has advanced the eventual final determination of the constitutional issue involved which affects so many of the younger residents of Nassau County.
In this regard, the introduction of several bills in the pending session of the Legislature indicates that this statute may be undergoing a complete and timely review and reconsideration at this session. The parents who will be distressed by any expansion of driving privileges of these young people, as well as those who with the young people concerned are likely to concur in the expansion of these privileges, may communicate their views to the Legislature. In the meantime, all the young people who are affected would be well advised to await final judicial determination and legislative action before seeking to avail themselves of the driving privileges which have up to now been curtailed by the challenged statute.
*183 In conclusion the court must commend the petitioner, who presented his grievance with exceptional clarity, persuasiveness and competence both with respect to the law and the facts. The presence among us of such future leaders as this young man and many others like him makes the future of this Nation appear a great deal brighter than we might at times envision it.